906 F.2d 606
 Marta O. TURNER, Irene Edwards, Margie Ray, on behalf of
themselves and all others similarly situated,
Plaintiffs-Appellees,
Shirley Evans, Intervenor-Plaintiff,
v.
James G. LEDBETTER, in his official capacity as Commissioner
of the Georgia Department of Human Resources,
Defendant-Appellant.
 No. 89-8907.
 United States Court of Appeals,
Eleventh Circuit.
 July 19, 1990.
 
 Mary Foil Russell, William F. Amideo, Office of State Atty. Gen., Atlanta, Ga., for defendant-appellant.
 Vicky O. Kimbrell, Atlanta, Ga., Nancy R. Lindbloom, Georgia Legal Services, Athens, Ga., for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of Georgia.
 Before HATCHETT and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In affirming the district court, we hold that the state of Georgia may not recoup funds paid to families pursuant to the Aid to Families with Dependent Children ("AFDC") program because the payments did not constitute "overpayments," and did not violate the eleventh amendment to the United States Constitution, or applicable statutes and regulations.
 
 FACTS
 
 2
 The AFDC program provides cash support to children who have been deprived of the care and support of one of their parents through either death, continued absence, incapacity or unemployment. 42 U.S.C. Sec. 606(a). The state of Georgia and the federal government funds the program. In order to receive federal funds, however, the program must comply with federal law, and the state is not permitted to impose eligibility requirements which exclude from coverage individuals who are eligible under federal statutes. 42 U.S.C. Secs. 601, 602(a). Carleson v. Remillard, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972).
 
 
 3
 James Ledbetter, Commissioner of the Georgia Department of Human Resources, is responsible for the State of Georgia's administration and operation of the AFDC program. Ledbetter is also responsible for ensuring that the state's program, as implemented, does not violate federal law.
 
 
 4
 Prior to 1981, AFDC recipients who received a lump sum of money were deemed in receipt of a "resource."[1] Under the law at the time, recipients of lump sum payments were terminated from the program until the lump sum was depleted below the $1,000 limit. Once the funds were depleted below that amount, the recipient could once again apply for aid.
 
 
 5
 After passage of the Omnibus Budget Reconciliation Act of 1981, a lump sum of money is deemed "income" to the recipient. Additionally, the new law requires that the recipient be terminated from the program for a "fixed period" of time, determined by dividing the lump sum amount by the recipient's "standard of need."[2] After the new rule became effective, the state of Georgia changed its policy to conform with federal law. In accordance with its new policy, the state terminated individuals who reported receiving a lump sum. Shortly after their terminations, these individuals received a computer-generated termination notice indicating the reasons for termination. Several of these individuals chose to appeal their terminations.
 
 PROCEDURAL HISTORY
 
 6
 Individuals who are and were recipients of AFDC ("recipients") filed a class action lawsuit seeking declaratory and injunctive relief generally alleging that the state improperly applied the lump sum rule. Specifically, they alleged that (1) the state provided inadequate notice of the lump sum penalties, (2) the state provided inadequate notice of their termination, and (3) the state improperly discontinued their medicaid benefits without providing the required separate determination of Medicaid eligibility.
 
 
 7
 In granting summary judgment in favor of the recipients on all issues, the district court held that the state was required to provide advanced written notice of changes in the lump sum budgeting regulations, that the written notices provided were inadequate, and that the medicaid termination procedures were improper. The district court also held that because the state failed to provide adequate notice, the recipients were not legally terminated. Consequently, the district court concluded that the state could not recoup any funds which the recipients received while appealing their terminations.
 
 
 8
 Following the Supreme Court's decision in Gardebring v. Jenkins, 485 U.S. 415, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988), the state moved for reconsideration. The district court vacated its holding that the state needed to provide written advance notice before terminating claimants, but refused to vacate its holding enjoining the state from recouping overpayment because the state gave the recipients inadequate notice of their rights and obligations under the new law.
 
 CONTENTIONS OF THE PARTIES
 
 9
 The state contends that the district court erred when it enjoined the recoupment of "overpayment" from AFDC recipients. According to the state, the district court's ruling violates both the eleventh amendment and the federal statutes and regulations governing the AFDC program.
 
 
 10
 The recipients contend that the state is prohibited from recouping funds which they received while appealing their termination. They argue that because they received insufficient notice of their rights and obligations under the program, the state's attempted termination was ineffective. Accordingly, they maintain that they were entitled to the funds received and did not receive an overpayment.
 
 ISSUE
 
 11
 The sole issue is whether the district court erred by enjoining the state from recouping funds which the recipients received in violation of current AFDC program requirements but which they were entitled to receive under the previous law.
 
 DISCUSSION
 
 12
 Federal law requires that a state agency promptly correct any overpayment of aid under a state plan administering the AFDC program. 42 U.S.C. Sec. 602(a)(22). Under federal regulations, an overpayment "means a financial assistance payment received by or for an assistance unit for the payment month which exceeds the amount for which that unit was eligible." 45 C.F.R. Sec. 233.20(a)(13)(i).
 
 Statutory Provisions
 
 13
 Federal regulations require that AFDC applicants be informed of "their rights and obligations under the program." 45 C.F.R. Sec. 206.10(a)(2)(i) (1987). In Gardebring v. Jenkins, 485 U.S. 415, 108 S.Ct. 1306, 99 L.Ed.2d 515 (1988), the Supreme Court held that states need not provide advance written notice concerning every specific change in eligibility to satisfy the federal notice regulation. Consequently, the Court held that the state of Minnesota provided adequate notice by distributing two printed brochures that generally described the AFDC program and the recipient's duty to report all household income monthly.
 
 
 14
 In this case, the district court found that the state did not provide the recipients with sufficient notice to satisfy the federal regulations. The state has not appealed the district court's finding on this issue. Consequently, this case is distinguishable from Gardebring.
 
 
 15
 Title 45 C.F.R. Sec. 206.10(a)(7) provides that "[i]n cases of proposed action to terminate, discontinue, suspend or reduce assistance, the agency shall give timely and adequate notice. Such notice shall comply with the provisions of Sec. 205.10 of this chapter." By failing to provide adequate notice, the state's attempted termination of the recipients' AFDC benefits became invalid. See Kimble v. Solomon, 599 F.2d 599, 604 (4th Cir.), cert. denied, 444 U.S. 950, 100 S.Ct. 422, 62 L.Ed.2d 320 (1979) (because of failure to give notice required by federal regulations, state had not "instituted a legally effective reduction in ... benefits"). As a result, any benefits that the recipients received must be examined under pre-1981 law to determine whether the recipients were eligible to receive such funds. Neither party suggests that the recipients received funds to which they would not be entitled under pre-1981 law. Any funds so received would clearly be an overpayment and subject to recoupment by the state.
 
 
 16
 The state now seeks to recoup funds which the recipients were entitled to under pre-1981 law. Because the state did not terminate the recipients in accordance with federal notice requirements, the recipients' entitlement to aid was not affected. Consequently, they did not receive an overpayment. To do as the state urges, would frustrate the federal regulations by allowing the state to violate the federal regulations requirement of adequate notice, and at the same time claim to have legally terminated AFDC recipients.
 
 Eleventh Amendment
 
 17
 We also agree with the district court's conclusion that the injunction against the recoupment of funds paid to these recipients does not violate the eleventh amendment. The eleventh amendment grants a state immunity from suits by an individual. Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Under the Supreme Court's interpretation of the eleventh amendment, federal courts may grant prospective injunctive relief but may not include a retroactive award which requires the payment of funds from the treasury. Edelman, 415 U.S. at 677, 94 S.Ct. at 1362. The Court made it clear that an eleventh amendment violation does not occur where the injunction has an ancillary effect on the state treasury such that "[s]tate officials, in order to shape their official conduct to the mandate of the Court's decrees, would more likely have to spend money from the state treasury than if they had been left to pursue their previous course of conduct." Edelman, 415 U.S. at 668, 94 S.Ct. at 1358.
 
 
 18
 The state argues that the present injunction against the recoupment of overpayment violates the eleventh amendment because it applies retroactively and has a direct impact on the state treasury. According to the state, the injunction allows the recipients to receive a "windfall" in that they are allowed to keep their lump sum payments as well as the benefits received during the pendency of their administrative appeal. This "windfall," says the state, has a direct impact on the state treasury and can only be viewed as a form of compensation. See Green v. Mansour, 474 U.S. 64, 68, 106 S.Ct. 423, 426, 88 L.Ed.2d 371 (1985) ("compensatory or deterrence interest are insufficient to overcome the dictates of the Eleventh Amendment.").
 
 
 19
 We agree with the district court's analysis and conclusion that the injunction in this case sought to prevent state officials from future violations of federal law. As the district court noted, individuals who did not appeal the state's improper termination of their benefits for inadequate notice are prohibited under Edelman from seeking damages for those benefits. See Edelman, 415 U.S. 651, 94 S.Ct. 1347. As we stated earlier, however, the recipients in this case, by successfully appealing the termination of their benefits on the basis of inadequate notice, did not receive an overpayment.
 
 
 20
 The eleventh amendment is not a bar in this case because the recipients are not seeking damages, but rather are seeking to prevent the state from essentially accomplishing a legal termination of AFDC benefits without providing adequate notice under federal law. The state's attempt to characterize the injunction as involving a form of compensatory damages is unavailing. Funds which the recipients received while challenging their terminations were legally awarded. Consequently, their receipt of these funds cannot be fairly characterized as compensatory.
 
 CONCLUSION
 
 21
 In conclusion, we hold that because the state failed to provide adequate notice, in accordance with federal law, the recipients in this case were not legally terminated; consequently, they did not receive an overpayment of AFDC funds. Additionally, we hold that the injunction prohibiting the recoupment of the funds paid to the recipients, does not violate the eleventh amendment. Accordingly, we affirm.
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 A federal regulation describes "lump-sum income":
 When the AFDC assistance unit's income, after applying applicable disregards, exceeds the State need standard for the family because of receipt of nonrecurring earned or unearned lump sum income (including for AFDC, title II and other retroactive monthly benefits, and payments in the nature of a windfall, e.g., inheritances or lottery winnings, personal injury and worker compensation awards, to the extent it is not earmarked and used for the purpose for which it is paid, i.e., monies for back medical bills resulting from accidents or injury, funeral and burial costs, replacement or repair of resources, etc.), the family will be ineligible for aid for the full number of months derived by dividing the sum of the lump sum income and other income by the monthly need standard for a family of that size....
 
 
 [45]
 C.F.R. Sec. 233.20(a)(3)(ii)(F) (1987)
 
 
 [2]
 For example, if a family whose standard of need is $400 per month received a lump sum of $1200, the family would be cut off AFDC for three months