986 F.2d 428
 James G. LEDBETTER, Ph.D., in his official capacity as
Commissioner of the Georgia Department of Human
Resources, Plaintiff-Appellee,
v.
Donna SHALALA, Secretary of the Department of Health and
Human Services; Carol Fraser Fisk, Commissioner of
Administration on Aging, and Frank Nicholson, Region IV
Program Director of Administration on Aging, Departmental
Grant Appeals Board, Defendants-Appellants.
 No. 91-8914.
 United States Court of Appeals,
Eleventh Circuit.
 March 17, 1993.
 
 1
 Daniel A. Caldwell, III., Asst. U.S. Atty., Atlanta, GA, Barbara C. Biddle, Mary K. Doyle, Marc Richman, Civ. Div., Appellate Staff, Dept. of Justice, Washington, DC, for defendants-appellants.
 
 
 2
 William M. Droze, William C. Joy, State Law Dept., Atlanta, GA, for plaintiff-appellee.
 
 
 3
 Appeal from the United States District Court for the Northern District of Georgia.
 
 
 4
 Before KRAVITCH, Circuit Judge, CLARK, Senior Circuit Judge, and PITTMAN*, Senior District Judge.
 
 PITTMAN, Senior District Judge:
 
 5
 This is an appeal from a summary judgment in favor of plaintiff-appellee James G. Ledbetter, in his official capacity as the Commissioner of the Georgia Department of Human Resources (hereinafter referred to as "the state"). The defendants-appellants are Donna Shalala[1] (Secretary of the Department of Health and Human Services), Carol Fraser Fisk (Commissioner of Administration on Aging), and Frank Nicholson (Region IV Program Director of the Administration on Aging), and the Departmental Grant Appeals Board [hereinafter collectively referred to as "the agency" ].
 
 I. Background
 
 6
 This action involves title III of the Older Americans Act, Public Law 89-73, as amended, 42 U.S.C. § 3021, et seq. [hereinafter "OAA" or "the act"], a brief explanation of which will facilitate discussion of the procedural history of this case.
 
 A. The Older Americans Act
 
 7
 Under the act, the federal government provides assistance to states for the development and administration of a comprehensive system of services for the elderly. See 42 U.S.C. §§ 3001, 3003. The Administration on Aging, which is part of the United States Department of Health and Human Services, is the federal agency primarily responsible for the administration of the act. 42 U.S.C. § 3011. Title III of the act provides for state and community programs on aging. Under title III, the agency uses a statutory formula to allocate grant funds to state and local programs that submit plans approved by the Commissioner of the Administration on Aging. 42 U.S.C. §§ 3024, 3025(a)(1).
 
 
 8
 The Georgia Office of Aging [hereinafter "GOA"], which is part of the Georgia Department of Human Resources [hereinafter "DHR"], is responsible for the implementation of title III programs in Georgia. DHR has established 18 separate planning and service areas for OAA programs within the state, and OAA programs in each of these areas are administered by an Area Agency on Aging that is designated by the GOA. Among the responsibilities imposed upon each area agency is an obligation to develop an area plan in accordance with federal and GOA requirements. The GOA is responsible for reviewing the area plans to ensure that they satisfy federal requirements. 42 U.S.C. § 3027(a)(2); 45 C.F.R. § 1321.45(a)(4). This responsibility includes ensuring that the costs and activities for which federal and state grant funds are obligated are allowable under the title III program and the cost principles promulgated in regulations pertaining to the administration of grant funds. 45 C.F.R. Part 74.
 
 
 9
 During the period relevant to the case at bar, the act provided that no more than 8.5% of a state's allotment of title III funds could be used to pay for the cost of area plan administration and that federal funds could not be used to pay for more than 75% of such costs. 42 U.S.C. § 3024(d)(1)(A). The 25% of administrative expenses that was to come from non-federal funds could be cash or "in-kind" contributions, but if the contribution was in-kind, it had to satisfy guidelines that established when in-kind contributions were "allowable." 45 C.F.R. §§ 74.53(e), 1321.201.
 
 B. Factual and Procedural History
 
 10
 The Atlanta Regional Commission [hereinafter "ARC"] is the area agency on aging for the metropolitan Atlanta area. Area plans were submitted by the ARC for the fiscal years commencing July 1, 1982, July 1, 1983, and July 1, 1984, respectively. The area plans were reviewed and ultimately approved by GOA. The ARC received allocations of title III grant funds to implement administration of its area plan for these fiscal years.
 
 
 11
 In 1985, the agency reviewed ARC's use of title III funds for these years and concluded that certain federal funds had been misused by ARC. The agency notified the state that the agency was considering disallowance of those funds. After the state defended its use of the funds to the agency, the Commissioner of the Administration on Aging disallowed the funds, and the commissioner's decision was affirmed by the Departmental Grant Appeals Board. The state then filed suit challenging the agency's statutory authority to order such a disallowance.
 
 
 12
 In early 1985, the agency conducted an administrative review of all the area agencies in Region IV, which included ARC. The review indicated that there were problems with the expenditure of title III funds in the state. Specifically, the review indicated that certain federal funds were being used incorrectly to fund "nutrition administration" on the area agency on aging level. The state was apprised of the agency's concern with the "nutrition administration" expenditures in a letter from defendant/appellant Frank Nicholson dated April 12, 1985. Admin.Appeal File at 132. By letter dated May 13, 1985, the state responded and maintained that its use of the funds was correct. Id. at 142. Nicholson and Fred McGinnis, director of the GOA, met on May 15, 1985, to discuss the disputed expenditures. At this meeting, the parties agreed that beginning in the fiscal year commencing July 1, 1985, the state would no longer fund "nutrition administration" in the manner objected to by the agency. Id. at 144. The state also agreed to a review by the agency of the use of title III funds by ARC and another area planning agency. The state, however, did not concede that the disputed use was incorrect.
 
 
 13
 The review of ARC was conducted July 15-19, 1985.[2] By letter dated January 14, 1986, Nicholson informed McGinnis that the agency's regional office was proposing to the Commissioner of the Administration on Aging that $1,132,818.00 of federal funds allocated to ARC during the 1982-83, 1983-84, and 1984-85 fiscal years be disallowed. $728,361.00 of these funds were related to the expenditures for "nutrition administration." The other $404,457.00 of the proposed disallowance related to ARC's use of in-kind contributions to meet the requirement that 25% of the cost of area administration be paid from non-federal sources: the agency found that ARC used $134,819.00 of unallowable in-kind contributions to match federal funds and that therefore the federal funds used to match the unallowable contributions were to be disallowed. The agency contributed three dollars for each one dollar of non-federal contribution, so the proposed amount to be disallowed was $404,457.00 (the amount of non-federal contribution found to be unallowable multiplied by three). The state contends that the January 14 letter contained the first mention by the agency of the issue of the allowability of the disputed in-kind contributions.
 
 
 14
 Nicholson's letter informed McGinnis that McGinnis had the opportunity to review and comment on the proposed disallowance. By letter dated March 14, 1986, McGinnis responded with arguments that the proposed disallowance was improper because the expenditures for nutrition administration were proper and because the in-kind contributions were allowable.
 
 
 15
 On August 18, 1986, appellee Ledbetter received a letter from appellant Fisk, then Acting Commissioner of the Administration on Aging, that was virtually identical to the January 14 letter sent to McGinnis for review and comment. The letter informed Ledbetter that $1,132,818.00 was being disallowed for the reasons discussed above. The August 18 letter contained the following statement that was also included in the letter dated January 14:
 
 
 16
 You have 30 days from receipt of this letter to elect one of the three options to repay the $1,132,818 in disallowed costs. The three options are:
 
 
 17
 (1) submit a check, drawn from non-Federal funds, payable to the Department of Health & Human Services;
 
 
 18
 (2) adjust the SF-269, Financial Status Report for the fiscal year allotment in question. The obligations on line K and the outlays on line G are to be reduced which will reflect an unobligated balance on line M for the appropriate fiscal years; and
 
 
 19
 (3) by a reduction in your current and/or future fiscal year Federal allotment.
 
 
 20
 The letter informed Ledbetter that it was the final decision of the commissioner and that the state had the right to appeal the disallowance of the costs to the Departmental Grant Appeals Board.
 
 
 21
 By letter dated September 5, 1986, the state requested that Commissioner Fisk reconsider the disallowance because the costs to be disallowed were actually proper. The state also argued that the disallowance was inconsistent with the prior practices of the agency and was contrary to verbal commitments made by the agency because the agency had previously approved of such expenditures. By letter dated September 12, 1986, appellant Fisk responded that the letter dated August 14 was the final decision of the commissioner and that any appeal would have to be submitted to the Departmental Grant Appeals Board.
 
 
 22
 The state filed notice of appeal to the Grant Appeals Board on September 15, 1986. As grounds for appeal, the state reiterated its arguments that the disputed expenditures were proper and that the costs disallowed had previously been approved by the agency. The state also argued that the disallowance was inconsistent with the purposes of the act, that the final decision was arbitrary and capricious, and that the disallowance action was not taken in strict compliance with agency procedures. The state submitted a rather lengthy brief devoted almost entirely to the argument that the agency should be estopped from disallowing the disputed costs because the agency had previously accepted and approved the costs.
 
 
 23
 On May 21, 1987, the Grant Appeals Board rejected the state's estoppel argument and found that the disputed costs were properly disallowed. The appeals board affirmed the commissioner's decision to disallow the $1,132,818.00. The board reaffirmed the disallowance on June 25, 1987.
 
 
 24
 On February 23, 1988, the state filed a petition for judicial review of the disallowance in the United States District Court for the Northern District of Georgia. Both the agency and the state filed motions for summary judgment. On July 9, 1991, the district court entered an order granting the state's motion for summary judgment and denying the agency's motion for summary judgment. The district court's order will be discussed infra. On August 13, 1991, judgment in favor of the state and against the agency was entered. The agency filed notice of appeal to this court on October 10, 1991.
 
 II. Discussion
 
 25
 The grant of summary judgment in favor of the state was a final decision by the district court, and this court has jurisdiction pursuant to 28 U.S.C. § 1291.
 
 
 26
 The issue before this court is whether the agency has the right to recover funds from the state that were allocated to the state pursuant to title III but were spent in violation of the requirements of title III.[3] Specifically, the issue is whether the agency has the statutory authority to recover the $1,312,818.00 that it purported to disallow through the administrative proceedings in this case. The district court's grant of summary judgment was based on its conclusion that, as a matter of law, the agency lacks such authority. This conclusion of law is subject to plenary review by this court. Crockett v. Uniroyal, Inc., 772 F.2d 1524, 1528-29 (11th Cir.1985) (citing Morrison v. Washington County, Alabama, 700 F.2d 678 (11th Cir.), cert. denied, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983); Federal Deposit Ins. Corp. v. Dye, 642 F.2d 837, 841 (5th Cir. Unit B 1981)).
 
 
 27
 The district court held that the agency has no authority to disallow funds allocated under title III of the act because the exclusive enforcement mechanism available to the Commissioner of the Administration on Aging [hereinafter "the commissioner"] is contained in 42 U.S.C. § 3027(b), (c), and (d), which do not authorize recovery by the agency of funds previously misspent by the state. Section 3027(b) provides that the commissioner shall approve any state agency on aging plan that meets the requirements set out in 42 U.S.C. § 3027(a). Section 3027(b) also provides that the commissioner may waive certain requirements of § 3027(a). Section 3027(c) provides that "[t]he commissioner shall not make a final determination disapproving any State plan, or any modification thereof, or make a final determination that a State is ineligible under section 305 [42 U.S.C. § 3025], without first affording the State reasonable notice and opportunity for a hearing." Section 3027(d) provides:
 
 
 28
 Whenever the Commissioner, after reasonable notice and opportunity for a hearing to the State agency, finds that--
 
 
 29
 (1) the state is not eligible under section 305 [42 U.S.C. § 3025],
 
 
 30
 (2) the State plan has been so changed that it no longer complies substantially with any such provision of subsection (a) [42 U.S.C. § 3027(a) ], or
 
 
 31
 (3) in the administration of the plan there is a failure to comply substantially with any provision of subsection (a) [42 U.S.C. § 3027(a) ],
 
 
 32
 the Commissioner shall notify such State agency that no further payments from its allotments under section 304 [42 U.S.C. § 3024] and section 308 [42 U.S.C. § 3028] will be made to the State (or, in his [or her] discretion, that further payments to the state will be limited to projects under or portions of the State plan not affected by such failure), until he [or she] is satisfied that there will no longer be any failure to comply. Until he [or she] is so satisfied, no further payments shall be made to such State from its allotments under section 304 [42 U.S.C. § 3024] and section 308 [42 U.S.C. § 3028] (or payments shall be limited to projects under or portions of the State plan not affected by such failure). The Commissioner shall, in accordance with regulations he [or she] shall prescribe, disburse the funds so withheld directly to any public or nonprofit private organization or agency or political subdivision of such State submitting an approved plan in accordance with the provisions of section 307 [42 U.S.C. § 3027]. Any such payment shall be matched in the proportions specified in section 304 [42 U.S.C. § 3024].
 
 
 33
 The district court characterized the provisions of § 3027 as a "plain conformity" remedy that provides for a non-compliance sanction. The district court held that "[t]he only mechanism explicitly provided [in the act] is the plain conformity remedy and the only sanction is the non-compliance sanction."
 
 
 34
 The district court's characterization of the provisions of § 3027 as providing only a non-compliance sanction is correct. See Georgia Dept. of Medical Assistance v. United States Dept. of Health & Human Servs., 708 F.2d 627, 628-30 (11th Cir.1983) (discussing the distinction between a disallowance and a noncompliance sanction). However, the district court's conclusion that § 3027 provides the agency's exclusive remedy is erroneous.
 
 
 35
 This court finds that, in addition to the prospective remedy provisions of § 3027, the act contains express provision for the agency to recover from the state title III funds misspent by the state in the past.
 
 
 36
 The state argues and the district court found that the agency's sole remedy is § 3027's prospective remedy whereby the agency can withhold funds from a state that does not comply with applicable requirements until the state brings its program into compliance. The state argues that because the term disallowance is not used anywhere in title III[4], the actions of the agency in this case were not authorized by the act. The agency contends that 42 U.S.C. § 3029(a) expressly authorizes it to recover funds improperly received or spent by the state regardless of whether the magic word "disallowance" is used.
 
 
 37
 Section 3029(a) provides, in pertinent part, that "[p]ayments of grants or contracts under this title [title III] may be made (after necessary adjustments resulting from previously made overpayments or underpayments) in advance or by way of reimbursement...." 42 U.S.C. § 3029(a) (emphasis added). The Supreme Court of the United States has construed similar language as giving the federal government a right to recover federally allocated funds from a state that misuses the funds. Bell v. New Jersey, 461 U.S. 773, 782-83, 103 S.Ct. 2187, 2192-93, 76 L.Ed.2d 312, 321-22 (1983).
 
 
 38
 In Bell, New Jersey and Pennsylvania received grants from the federal government under title I of the Elementary and Secondary Education Act of 1965 (ESEA), 20 U.S.C. § 2071, et seq. (1976 & Supp. V). "Title I created a program designed to improve the educational opportunities available to disadvantaged children." Bell, 461 U.S. at 776, 103 S.Ct. at 2189. Under title I, the Department of Education provided grants to state educational agencies, and the state educational agencies in turn provided grants to local educational agencies. The Department of Education audited New Jersey and Pennsylvania to ensure compliance with the ESEA, and the auditors found that both states had misapplied title I funds. Id. at 777, 103 S.Ct. at 2190. The states requested review of the determination, and the Education Appeal Board modified the findings of the auditors and assessed a deficiency of $1,031,304 against New Jersey and a deficiency of $422,424.29 against Pennsylvania. The order of the appeal board subsequently became final and both states filed timely petitions for review in the United States Court of Appeals for the Third Circuit. The Third Circuit held that the Department of Education did not have authority to issue the orders. Id. (citation omitted).
 
 
 39
 Before the Supreme Court, both New Jersey and Pennsylvania argued that "the Secretary's sole remedy for noncompliance was prospective: he could withhold funds from a State that did not comply, until the State brought its program into compliance or he could deny applications for funds for noncomplying programs." Id. at 780-81, 103 S.Ct. at 2192 (internal citation omitted). In finding that the ESEA "contemplated that States misusing federal funds would incur a debt to the Federal Government for the amount misused," the court considered section 207(a)(1) of the ESEA, which originally provided:
 
 
 40
 The Commissioner shall, subject to the provisions of § 208 [dealing with inadequate appropriations], from time to time pay to each State, in advance or otherwise, the amount which the local educational agencies of that State are eligible to receive under this part. Such payments shall take into account the extent (if any) to which any previous payment to such State educational agency under this title (whether or not in the same fiscal year) was greater or less than the amount which should have been paid to it.
 
 
 41
 Bell, 461 U.S. at 782, 103 S.Ct. at 2193 (quoting Pub.L. 89-10, 79 Stat. 32). The Court found that this provision "gives the Federal Government a right to the amount of any funds overpaid. The plain language of the statute recognizes the right, and the legislative history supports that natural reading." Id. at 783, 103 S.Ct. at 2193 (internal footnote omitted).
 
 
 42
 This court finds that Bell is dispositive of this case and that the plain language of 42 U.S.C. § 3029(a) gives the agency the right to recover from the state any amount of funds paid to the state that were not used in compliance with the applicable federal requirements. The state argues that the instant case is distinguishable from Bell because in this case there is no legislative history that supports the conclusion that § 3029(a) gives the state the right to recover misused funds. The state is correct that there is no legislative history establishing that this reading of § 3029(a) is correct, but that fact is rendered moot by this court's finding that the agency's right to recover misused funds is found in the plain language of § 3029(a). Because this court finds that the intent of Congress to give the agency the right to recover misused funds is clearly and unambiguously expressed by the plain language of § 3029(a), "that is the end of the matter." Chevron U.S.A. v. Natural Resources Defense Council, 467 U.S. 837, 842-43, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694, 702-03 (1984). The Court in Bell stated that the legislative history supported the court's construction of the plain meaning of the ESEA provision, but the Court in no way implied that such support was necessary for a finding that the plain language of the provision gave the federal government the right to recover misused funds in that case. In fact, to accept the state's argument would render the plain meaning rule absolutely meaningless.
 
 
 43
 This court is not impressed by the state's argument that even if disallowance is a proper remedy for the agency to employ, the disallowance in this case was incorrect because the agency did not provide the notice required by 42 U.S.C. § 3027. The state argues that "[t]here was no overpayment to recoup in this case under 42 U.S.C. § 3029(a), because HHS did not properly notify the Department that it was out of compliance under § 3027(c)." Section 3027(c) provides that "[t]he Commissioner shall not make a final determination disapproving any State plan, or modification thereof, or make a final determination that a State is ineligible under section 305 [42 U.S.C. § 3025], without first affording the State reasonable notice and opportunity for a hearing."
 
 
 44
 The state is correct that this section gives it a right of notice and opportunity to be heard, but reading section 3027(c) in conjunction with section 3027(d), quoted supra, makes it clear that the notice and opportunity to be heard referred to in § 3027(c) is notice and opportunity to be heard with regard to the prospective remedy provided in section 3027(d). The agency's action in this case is not an attempt to employ the prospective remedy provided in § 3027(d) but is rather an attempt to recover funds allocated and misspent in the past. To accept the state's argument would impose on the agency the obligation to detect that funds were going to be misused before they were misused. It is unlikely that Congress intended to impose such a duty on the agency. This court finds it difficult to conceive that Congress would authorize funds for specific purposes but would provide no action to recover the funds if the funds were misused or otherwise improperly spent. This court rejects the state's argument that there was no overpayment to be recovered under § 3029(a) because of the agency's purported failure to provide the notice required by § 3027(c).[5]
 
 
 45
 The state also argues that § 3029(a) only gives the agency the right to make "necessary adjustments resulting from previously made overpayments or underpayments" that were made inadvertently or accidentally. This argument is not persuasive. As the agency correctly points out, there is no such limitation in the language of § 3029(a) and the legislative history indicates no intent to place such a limitation on § 3029(a). Furthermore, as the Supreme Court stated when it addressed this argument in Bell, "[e]ven accepting that interpretation, we remain convinced that the provision covers payments misused as the [agency] determined these to have been. Grants of misused funds result from the 'accident' of the [agency's] reliance on assurances by the State that the recipient will use the funds in a program that complies with [title III], when in fact the recipient misuses the funds." Bell, 461 U.S. at 787, 103 S.Ct. at 2195-96.
 
 
 46
 This court concludes that the district court erred in deciding that the agency's only mechanism for enforcing the provisions of title III of the act are contained in 42 U.S.C. § 3027. The plain meaning of § 3029(a) gives the agency the right to recover, by adjustment for overpayments, title III funds allocated to and misused by the state.[6] Regarding the means by which the agency may recover such funds, the wording of the provision clearly shows that § 3029(a) authorizes only some form of set-off whereby any amount of funds misspent by a state would be subtracted from any future grants. Section 3029(a) provides that "[p]ayments of grants or contracts under this title [title III] may be made (after necessary adjustments resulting from previously made overpayments or underpayments) in advance or by way of reimbursement...." 42 U.S.C. § 3029(a) (emphasis added). This language clearly authorizes the agency to subtract funds misspent in the past from future grants.
 
 
 47
 Because of its holding that the agency's remedies were limited to those in § 3027, the district court in this case did not address the issue of whether the agency was correct in its decision that the funds at issue in this case were misused and, therefore, subject to disallowance. Also, the parties preserved their respective rights to litigate the issue of whether the funds were misused and correctly disallowed in the event that the case was appealed and remanded to the district court for further consideration. RE 36, 37. Therefore, this court does not reach this issue.
 
 
 48
 Accordingly, the judgment of the district court is REVERSED, and this case is REMANDED to the district court for further proceedings consistent with this opinion.
 
 
 49
 IT IS SO ORDERED.
 
 
 
 *
 Honorable Virgil Pittman, Senior U.S. District Judge for the Southern District of Alabama, sitting by designation
 
 
 [1]
 Pursuant to Fed.R.Civ.P. 25(d), Donna Shalala was substituted as a party for her predecessor as Secretary of HHS, Louis W. Sullivan
 
 
 [2]
 The review of the other area agency found no non-compliance and is not challenged in this action
 
 
 [3]
 The district court did not reach the question of whether the funds at issue in this case were used in violation of the act. However, for the purposes of this appeal, this court will proceed on the assumption that the funds were so used
 
 
 [4]
 Disallowances are explicitly authorized under 42 U.S.C. § 1316(d), but that section is not contained in title III and by its own terms does not apply to title III programs
 
 
 [5]
 The state urges that Turner v. Ledbetter, 906 F.2d 606 (11th Cir.1990) is dispositive of the notice issue in this case. The Turner court held that the State of Georgia could not recoup certain funds paid to families pursuant to the Aid to Families with Dependent Children ["AFDC"] program on the ground that the payments did not constitute overpayments because the state had not provided adequate notice that the state intended to terminate the payments. The court stated "[b]ecause the state did not terminate the recipients in accordance with federal notice requirements, the recipients' entitlement to aid was not affected. Consequently, they did not receive an overpayment." Id. at 609 (emphasis added)
 This court finds Turner is distinguishable from the case at bar because: (1) this court's finding that the notice requirements of § 3027(c) do not apply to adjustments made under § 3029(a); and (2) the Turner court found the state was trying to recover "AFDC" funds to which the families were actually entitled. In this case, there has been no finding that the state is actually entitled to the federal aid sought to be recovered; that determination is left to the district court on remand. In the case at bar, there has been no termination or purported termination of payments to the state. The plaintiff is merely seeking to recover funds which it claims were inappropriately spent.
 
 
 [6]
 Because of this court's holding that the agency has statutory authority to recover misused title III funds from the state, the court will not discuss the agency's alternative argument that it has a common law right to recover misused funds