**Barbara S. WALDROP, Plaintiff–Appellant,**

v.

**SOUTHERN COMPANY SERVICES, INC., Defendant–Appellee.**

No. 93–6230.

United States Court of Appeals, Eleventh Circuit.

June 29, 1994.

* Honorable Floyd R. Gibson, Senior U.S. Circuit Judge for the Eighth Circuit, sitting by designation.

Richard J. Ebbinghouse, Robert L. Wiggins, Jr., Gordon Silverman Wiggins & Childs, Birmingham, AL, for appellant.

John R. Carrigan, T. Dwight Sloan, Harold A. Bowron, Jr., Balch & Bingham, Birmingham, AL, for appellee.

Before COX, Circuit Judge, JOHNSON, Senior Circuit Judge, and PAINE *, Senior District Judge.

JOHNSON, Senior Circuit Judge:

Barbara Waldrop appeals the district court's denial of her claim pursuant to § 504 of the Rehabilitation Act of 1973. Because we hold that, when requested, a jury trial is constitutionally required under § 504 and that Waldrop properly sought relief of a type that triggers the requirement, we reverse and remand for further proceedings.

## I. STATEMENT OF THE CASE

In response to being laid-off from her employment at Southern Company Services ("Appellee") one year before, Waldrop brought suit in March 1991 in the Northern District of Alabama, alleging that Appellee discharged her in violation of her rights under (1) the Age Discrimination in Employment Act of 1967, 29 U.S.C.A. §§ 621 to 634 (West 1985 and 1993 Supp.) ("ADEA") and (2) the Rehabilitation Act, 29 U.S.C.A. §§ 701 to 796f–6 (West 1985 & 1994 Supp.) ("§ 504" or "Rehabilitation Act"). Waldrop challenged Appellee's use of certain practices, policies, procedures, and criteria on both disparate impact and disparate treatment grounds. In her complaint, Waldrop sought (1) declaratory and injunctive relief pursuant to the ADEA and § 504 and (2) "an order requiring [Appellee] to make her whole by awarding her the positions she would have occupied in the absence of age and/or handicap discrimination, by awarding him [sic] back-pay (plus interest), and by awarding her liquidated damages, lost seniority, lost pension and fringe benefit credits, costs, attorney's fees and expenses." The complaint requested a jury trial on all claims.

The district court thereafter entered a pretrial order instructing the parties to itemize all claimed damages and to show the amount and the *method of computation* of the damages. Pursuant to the pretrial order, Waldrop submitted her list of damages, providing *in toto*:

Plaintiff submits the following damages pursuant to the pretrial order entered in this case:

> The plaintiff is entitled to $21,115.56 in backpay as of the date trial is set. Should the Jury find as the plaintiff contends that the termination was willful, then in that event the liquidated damages would be $42,231.12. These figures do not include pay raises which may have occurred from the date of termination which may be indicated on documents within the defendant's possession which have not yet been produced pursuant to the plaintiff's discovery request nor bonuses, overtime, attorney's fees and costs and expenses for litigation in this case as well as any change in the NLRB interest rate or the accrual of interest from this date to the time of trial.

Plaintiff reserves the right to amend this damage list after defendant has produced documents containing information relating to this issue which have not been produced to date. The amount so listed may or may not increase or decrease as a result of information in the documents requested for production, and any change in the NLRB interest rate and actual date of the trial is held for which interest would accrue.

In listing Waldrop's claims of relief, the order presented claims for "compensatory and punitive damages," including a requested back pay award. Counsel for both parties announced their readiness for trial upon the court's docket call on February 3, 1992. Before jury selection, however, the court questioned whether Waldrop had complied with the pretrial order's requirements. Specifically, the court stated: "Well, I have a concern that the parties have not raised, but apparently it's due to be raised, and that is the issue of whether the plaintiff is seeking compensatory and punitive damages." During a subsequent colloquy with Waldrop's counsel, the court stated: "In your statement of position in the pre-trial order, you indicat-

---

* Honorable James C. Paine, Senior U.S. District Judge for the Southern District of Florida, sitting by designation.

ed that the plaintiff was seeking, among other things, punitive and compensatory damages. And the defendant has not quarreled with your right to seek those damages and, therefore, you are entitled to a jury trial on that issue, it seems to me." Appellee's lawyer thereupon objected, stating that Waldrop had not complied with the pretrial order's requirements of specificity and itemization of damages.

Waldrop's counsel responded that the requested compensatory damages equalled the back pay and the liquidated damages. In rejecting this claim, the court held:

> [I]n view of the failure of the plaintiff to itemize compensatory damages under— compensatory damages and punitive damages under Item 8 of the pre-trial order, the court concludes that the plaintiff has abandoned her claim for those items of damages. And based on that conclusion, the court concludes that the plaintiff is not entitled to a jury trial on the rehabilitation claim.

The court did not, however, find that Waldrop waived her claim to back pay. The jury found in favor of Appellee on the ADEA claim, and the court rendered judgment in favor of Appellee on the § 504 claim.

## II. DISCUSSION

■ On appeal, Waldrop asks this Court to review the district court's holding that neither § 504 nor the Seventh Amendment to the United States Constitution afforded her the right to a jury trial on her rehabilitation claim.[1] We subject conclusions of law to plenary review. *Ledbetter v. Shalala,* 986 F.2d 428, 430 (11th Cir.), *cert. denied,* — U.S. ——, 114 S.Ct. 599, 126 L.Ed.2d 564 (1993).

■ In determining whether a plaintiff is entitled to a jury trial, we first must interpret the statute. *Tull v. United States,* 481 U.S. 412, 417 n. 3, 107 S.Ct. 1831, 1835 n. 3,

95 L.Ed.2d 365 (1987). If the statute explicitly provides for a jury trial, then trial before a jury is merited. If the statute and its legislative history are silent regarding the right to a jury trial, then we must ask whether a jury trial is constitutionally required under the Seventh Amendment. *Id.; see also Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry,* 494 U.S. 558, 564 n. 3, 110 S.Ct. 1339, 1344 n. 3, 108 L.Ed.2d 519 (1990).

### A. *Rehabilitation Act*

■ Section 504, as amended, provides in part:

> No otherwise qualified individual with a disability in the United States, as defined in section 706(8) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

29 U.S.C.A. § 794(a). On its face, then, the statute does not indicate the procedures involved in suits by private parties or the remedies available for violations of the statute. Congress first addressed these questions in 1978 by borrowing the "remedies, procedures, and rights" set forth in Title VI of the Civil Rights Act of 1964,[2] and by making them available to plaintiffs proceeding under § 504. *Wood v. President & Trustees of Spring Hill College,* 978 F.2d 1214, 1219 n. 10 (11th Cir.1992) (citing 29 U.S.C.A. § 794a(a)(2)). Further, Title VI does not discuss the procedures or penalties available to a private party alleging discrimination under the statute. Because neither § 504 nor Title VI provides any guidance on the availability of a jury trial in a private action, we must inquire as to whether the Constitution provides such a right.

---

**1.** Preliminarily, the district court did not abuse its discretion by finding Waldrop did not obey the pretrial order's demand to specify compensatory damages. *See Iervolino v. Delta Air Lines,* 796 F.2d 1408, 1419–20 (11th Cir.1986), *cert. denied,* 479 U.S. 1090, 107 S.Ct. 1300, 94 L.Ed.2d 155 (1987). In addition, Waldrop's

claim that Appellee consented to a jury trial fails because Appellee did object to trial by jury on the § 504 claim.

**2.** 42 U.S.C.A. §§ 2000d to 2000d–7 (West 1981 & 1994 Supp.).

**B.** *Seventh Amendment*

■ The Seventh Amendment preserves the right to a jury trial "[i]n suits at common law, where the value in controversy shall exceed twenty dollars." The amendment extends the right to a jury trial to all suits where legal rights are involved, whether at common law or arising under federal legislation. *See, e.g., Curtis v. Loether,* 415 U.S. 189, 194, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974). Thus, the Seventh Amendment applies to actions enforcing statutory rights and requires a jury trial on demand whenever the statute creates legal rights and remedies that are "enforceable in an action for damages in the ordinary courts of law." *Id.* at 194, 94 S.Ct. at 1008. *See Bell v. Hood,* 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946). Compensatory damages are the classic form of legal relief. *Mertens v. Hewitt Assocs.,* — U.S. —, —, 113 S.Ct. 2063, 2068, 124 L.Ed.2d 161 (1993) (citing *Terry,* 494 U.S. at 570–71, 110 S.Ct. at 1347–48). In contrast, the right to a jury trial does not extend to cases in which only equitable rights are at stake. *Curtis,* 415 U.S. at 198, 94 S.Ct. at 1010.

■ To resolve the issue of the availability of a jury trial under the Seventh Amendment when the statute does not provide the answer on its face, the Supreme Court has established a two-pronged standard. *See Terry,* 494 U.S. at 565, 110 S.Ct. at 1344. First, the nature of the statutory action is compared to 18th-century actions brought in the English courts prior to the merger of the courts of law and equity. Second, the remedy sought is examined to determine whether it is legal or equitable in nature. *Id.* (citing *Tull,* 481 U.S. at 417–18, 107 S.Ct. at 1835). The Supreme Court has repeatedly stressed that the second inquiry is the "more important" of the two. *Terry,* 494 U.S. at 565, 110 S.Ct. at 1344 (citing *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 42, 109 S.Ct. 2782, 2790, 106 L.Ed.2d 26 (1989)). *See Wooddell v. International Bhd. of Elec. Workers, Local*

71, — U.S. —, —, 112 S.Ct. 494, 498, 116 L.Ed.2d 419 (1991).

■ As to the first prong, although there were no discrimination actions at common law, § 504's remedies appear comparable to actions brought before courts of law in 18th-century England. *See generally* Timothy H. Heinsz, *The Assault on the Employment at Will Doctrine: Management Considerations,* 48 Mo.L.REV. 855, 858–62 (1983) (discussing evolution of employee protection). In *Hill v. Winn–Dixie Stores, Inc.,* 934 F.2d 1518, 1524 (11th Cir.1991), we determined that actions pursuant to the Jury System Improvements Act of 1978,[3] which protects an employee from discharge or intimidation by her employer on account of her jury service, is analogous to (1) an action in tort to redress discrimination and (2) an action for breach of an employment contract. We find § 504 claims to be equally comparable to these 18th-century actions. *See Curtis,* 415 U.S. at 196 n. 110, 94 S.Ct. at 1009 n. 110 ("An action to redress racial discrimination may also be likened to an action for defamation or intentional infliction of mental distress."). Regardless, even if this first factor does not persuasively militate for a jury trial, the second prong convinces us that Waldrop deserved a jury trial on her § 504 claim.

■ The question of the type of remedies available under § 504 had divided the Courts of Appeals. *Compare Wood,* 978 F.2d at 1219–20 (compensatory and punitive damages are recoverable for § 504 claims alleging intentional discrimination) *with Doe v. Region 13 Mental Health–Mental Retardation Comm'n,* 704 F.2d 1402, 1407 n. 3 (5th Cir. 1983) (legal damages are not recoverable under § 504) (dicta). However, as Appellee admits, the Supreme Court recently resolved this dispute in favor of allowing compensatory damages. *See Franklin v. Gwinnett County Pub. Schs.,* — U.S. —, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). In *Franklin,* the Supreme Court reversed this Circuit and concluded that a private right of action under

---

**3.** 28 U.S.C.A. § 1875 (West Supp.1993). This Act provides:

"No employer shall discharge, threaten to discharge, intimidate, or coerce any permanent employee by reason of such employee's jury service, or the attendance or scheduled attendance in connection with such service, in any court of the United States." § 1875(a).

Title IX of the Education Amendments of 1972 [4] provides the full panoply of remedies, legal and equitable, to a successful plaintiff. *Id.* at ——––——, 112 S.Ct. at 1033–36. The similarities between Title IX and § 504 require the same finding in cases, such as this one, pursuant to the Rehabilitation Act.[5] Thus, suits under § 504 provide to plaintiffs the full spectrum of remedies, such that in appropriate § 504 cases, the Seventh Amendment allows a jury trial.

■ Nonetheless, we refrain from saying that a jury trial is constitutionally required in every § 504 action. Rather, actions seeking only equitable relief are unaffected by the availability of a jury trial for plaintiffs who seek damage remedies. *Curtis,* 415 U.S. at 198, 94 S.Ct. at 1010. In Waldrop's complaint, she prayed for damages that included (1) back pay and (2) liquidated damages (a doubling of the lost back pay).[6] Thus, the essential issue is whether Waldrop's prayer for back wages constituted legal or equitable relief. Here, the court denied Waldrop a jury trial on her § 504 claim, ruling that no such right exists for back pay claims under the Rehabilitation Act. As we elaborate below, the court improperly denied Waldrop a jury trial because a back pay award in a § 504 action is legal in nature, thereby creating a Seventh Amendment jury trial right.

■ Generally, "an action for money damages was 'the traditional form of relief offered in the courts of law.'" *Terry,* 494

U.S. at 570, 110 S.Ct. at 1347 (quoting *Curtis,* 415 U.S. at 196, 94 S.Ct. at 1009). However, it does not necessarily follow that all awards of monetary damages constitute legal relief. *Id.* Nonetheless, whether a remedy is legal in character is liberally interpreted, *Granfinanciera,* 492 U.S. at 49 n. 7, 109 S.Ct. at 2794 n. 7, and the primary exception to the general rule is that damages are equitable when "they are restitutionary, such as in 'action[s] for disgorgement of improper profits.'" *Terry,* 494 U.S. at 570, 110 S.Ct. at 1347 (alteration in original) (quoting *Tull,* 481 U.S. at 424, 107 S.Ct. at 1839). We note that in other contexts, back pay has been labelled a form of restitution and hence treated as an equitable remedy. *See Albemarle Paper Co. v. Moody,* 422 U.S. 405, 415–19, 95 S.Ct. 2362, 2370–72, 45 L.Ed.2d 280 (1975) (characterizing back pay awarded against employer under Title VII as equitable in context of assessing whether judge erred in refusing to award such relief). In fact, however, the recent trend of Supreme Court cases is to treat back pay awards as legal remedies. For example, when confronted with whether a plaintiff suing his local union for back wages under the Labor Management Reporting and Disclosure Act of 1959 [7] deserved a jury trial, the Supreme Court concluded that back pay constituted a compensatory damage at law. *Wooddell,* —— U.S. at ——, 112 S.Ct. at 498. Similarly, in *Terry,* the Supreme Court ruled that, pursuant to § 301 of the Labor–Management Relations Act,[8] a back pay award was a legal remedy. 494 U.S. at

---

**4.** 20 U.S.C.A. §§ 1681–1688 (West 1990). This statute provides in pertinent part: "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance". § 1681(a).

**5.** Section 504 was passed in 1973, just a year after Title IX. The statutes are virtually identical in the scope of their protections, with the principal exception being the class protected. As a result, the *Franklin* Court repeatedly analogized the two statutes. —— U.S. at ——, ——, 112 S.Ct. at 1035, 1036. Moreover, it is well-established that Congress intended the same remedies be available under Title IX and Title VI. *Guardians Assoc. v. Civil Serv. Comm'n,* 463 U.S. 582, 594, 103 S.Ct. 3221, 3228, 77 L.Ed.2d 866 (1983) (White, J., plurality). Thus, *Franklin* establishes

that damages are available in Title VI cases as well as Title IX cases. Similarly, given that Congress specifically provided that the same remedies be available under § 504 as are available under Title VI, *Franklin* must permit damage awards for discrimination under § 504.

**6.** The ADEA allows for "liquidated damages" in an amount double lost back pay. *See* 29 U.S.C.A. § 626(b); *Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 556 (8th Cir.1993) (en banc). Hence, we conclude that the liquidated damages claim was addressed solely to the now-abandoned ADEA claim.

**7.** 29 U.S.C.A. §§ 401–531 (West 1985 & 1994 Supp.).

**8.** 29 U.S.C.A. § 185(a) (West 1978).

570.[9] Thus, it would be careless to hold, as Appellee would have us, that back pay awards under § 504 constitute equitable restitution simply because courts have reached that conclusion under circumstances different than those presented here.[10] Accordingly, in our analysis we next put a request for a back pay award under § 504 against the framework of restitution law to determine whether back pay constitutes legal or equitable relief.

At the outset, we note that it has long been the general rule that back wages are legal relief in the nature of compensatory damages. *See* DAN B. DOBBS, HANDBOOK ON THE LAW OF REMEDIES § 2.6, at 69 n. 18, § 12.25, at 924–27 (1973) (noting that back pay "is precisely the claim available as damages to any discharged employee" and elaborating on back pay as legal remedy); 1 ARTHUR G. SEDGWICK & JOSEPH H. BEALE, A TREATISE ON THE MEASURE OF DAMAGES § 3, at 3 (1920) (noting that "[e]quity ... gives specific relief by decreeing the very thing to be done which was agreed to be done.... But, as a general rule, it refrains from awarding pecuniary reparation for damage sustained."); 2 *id.* at § 665, at 1343 (under the heading "Damages for wrongful discharge," noting that "[t]he general rule in cases of wrongful discharge ... is that the plaintiff has a right to recover the stipulated wages for the full time[.]").

Restitution is generally defined as an equitable remedy designed to cure unjust enrichment of the defendant absent consideration of the plaintiff's losses. *See* RESTATEMENT OF RESTITUTION general scope note at 1 (1937) (rep. 1962); DOBBS, *supra,* § 1.1, at 1–2. For example, if the defendant misappropriates money held in trust for the plaintiff and invests the money in corporate stock, the defendant will be held liable to make restitution of the stock even though the stock's value might far exceed the money taken from the plaintiff. Although this remedy, which returns to the plaintiff more than was lost, gives the plaintiff a windfall profit, it is permissible to prevent the defendant's unjust enrichment from an intended wrong. *See* DOBBS, *supra,* § 1.1, at 1–2.

Additionally, restitution can mean restoration in kind of a specific thing. *See First Nat'l Life Ins. Co. v. Sunshine–Jr. Food Stores, Inc.,* 960 F.2d 1546, 1553 (11th Cir.1992) ("Restitution is an equitable remedy designed to restore to a plaintiff something of value that is wrongfully in the possession of another."), *cert. denied,* — U.S. ——, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993); *see* DOBBS, *supra,* § 4.1, at 222–29; Douglas Laycock, *The Scope and Significance of Restitution,* 67 TEX.L.REV. 1277, 1279 (1979). That is, where the plaintiff transfers tangible property to the defendant and then, due to the defendant's fault, lawfully elects to rescind the transaction, the plaintiff is entitled to recover the transferred property back from the defendant. For example, if a defendant fraudulently purchases an automobile by conveying a check supported by insufficient funds, the plaintiff may rescind the deal and recover the vehicle. On the other hand, if the plaintiff recovers the monetary value of the automobile, rather than the automobile itself, that award would constitute compensatory damages for the plaintiff's loss of the automobile, not equitable restitution. *See* Laycock, *supra,* at 1282–83 ("[R]estitution of the value of what plaintiff lost is simply compensatory damages. Used in this sense,

9. In the context of the federal jury act, we recently held that a back wages remedy is of a legal nature. *See Hill,* 934 F.2d at 1523–25.

10. Some courts have nevertheless stated that back pay is an equitable remedy under § 504, relying principally upon the similarities between § 504 and Title VII under which back pay is generally considered an equitable remedy. *See, e.g., Doe,* 704 F.2d at 1407 n. 3 (dicta). However, the remedy portions of the statutes are materially different. Title VII, as opposed to § 504 and Title VI from which the § 504 remedies are derived, (1) specifically defines what relief is available under the statute, 42 U.S.C.A. § 2000e–5(g), and (2) refers only to equitable relief. *Id.*

Furthermore, *Terry* cautions against presuming that because a back pay claim may not entitle a jury trial under Title VII, it never merits a jury trial. *See* 494 U.S. at 572, 110 S.Ct. at 1348 (distinguishing legal back pay remedy for violation of union's statutory duty of fair representation from equitable back pay remedy for violation of Title VII). Consequently, Appellee's contention that courts characterize back pay as equitable relief when sought pursuant to Title VII is unavailing in this case in which back pay is sought pursuant to § 504.

 

"restitution" loses all utility as a means of distinguishing one body of law from another. Restitution must be distinguished from compensation, either by its focus on restoration of the loss in kind or by its focus on defendant's gain as a measure of recovery.").

■ In this instance in which relief is sought under § 504, a back pay award is clearly compensatory, fitting within neither definition of restitution. First, this is not a situation in which Appellee was unjustly enriched by its (allegedly wrongful) termination of Waldrop. That is, Waldrop's discharge did not generate a windfall profit for Appellee, as would have been the case if Appellee had received the benefits of Waldrop's continued employment but refused to pay her. Nor would a back pay award here restore the value of something Waldrop lost, as would be the case if Appellee is forced to reinstate Waldrop.[11] Rather, the Rehabilitation Act proscribes the employer's interference with the employee's right to work on the ground that the employee has a disability. Thus, an award of back pay under the Act to Waldrop grants her the "value" of the job for which she was wrongfully excluded and is thus compensatory damages, not "in kind" restitution. As such, there is no escaping the fact that the back pay relief sought by Waldrop was designed to compensate her for an injury, the loss of her job. Consequently, for Seventh Amendment purposes, Waldrop's claim for back pay pursuant to § 504 constituted legal relief.[12] Accordingly, the court erred by denying Waldrop a jury trial.[13]

### III. CONCLUSION

The district court's judgment is REVERSED and REMANDED for proceedings consistent with this opinion.

---

11. An award of reinstatement would be "in kind," equitable restitution. Here, under her rehabilitation claim, Waldrop asked for both reinstatement and back pay. We note that reinstatement and back pay are separate, independent kinds of relief, such that Waldrop's demand for reinstatement does not transform her back pay claim into equitable relief. *See Lewis v. Federal Prison Indus., Inc.,* 953 F.2d 1277, 1282–83 (11th Cir.1992) (Tjoflat, C.J., concurring in part, dissenting in part) (remarking that under ADEA, back pay is defined as legal relief, whereas reinstatement is defined as equitable relief).

12. Outside of the Seventh Amendment considerations, there is also a pragmatic reason for treating back pay as a compensatory damage. In most § 504 cases, the plaintiff expressly asks for compensatory damages and back pay. Indeed, such a situation is not present here only because Waldrop waived her specific claim to compensatory damages by not itemizing them as per the court's pretrial order. In such a case, the trial court's submission of the issue of back pay to the jury as a factor to be considered in its award of compensatory damages eliminates the inevitable overlap between compensatory damages and back wages. In most cases of an alleged illegal firing, evidence of the employee's pay is available. To expect a jury to ignore this is unrealistic, especially where it may constitute the major item of compensatory damages.

13. We do not address whether the court properly ruled for Appellee on Waldrop's § 504 claim, as this determination is properly reserved for the jury on remand.