624 So.2d 376 (1993)
LORD & SON CONSTRUCTION, INC. and United States Fidelity & Guaranty, Appellants,
v.
ROBERTS ELECTRICAL CONTRACTORS, Inc., Appellee.
No. 92-03011.
District Court of Appeal of Florida, First District.
September 22, 1993.
*377 James E. Moore and Alice H. Murray, Moore, Kessler & Moore, Niceville, for appellants.
Bill R. Hutto, Hutto, Nabors, Bodiford & Warner, Panama City, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final judgment entered pursuant to a jury verdict in favor of the subcontractor in a contract dispute.
On February 24, 1989, Lord & Sons Construction Co., Inc. (Lord & Sons) entered into a contract with Gulf Coast Community College (Gulf Coast) to build a student services facility. On March 7, 1989, Lord & Sons entered into a subcontract with Roberts Electrical Contractors, Inc. (Roberts). Construction began on March 13, 1989, but "substantial completion" of the project did not occur until August 7, 1991, because of various delays.[1]
The subcontractor, Roberts, filed suit against the general contractor, Lord & Sons, for money lost as a result of the delays. Lord & Sons filed an answer to the complaint and a motion to compel arbitration or mediation, contending that the subcontract incorporated terms of the general contract which required controversies be settled by arbitration. The trial court denied the motion, holding that only that portion of the subcontract requiring the furnishing and installation of the items listed in the subcontract, was governed by the arbitration provisions of the general contract.
We hold that the terms of the subcontract unambiguously incorporated certain provisions of the general contract, among which was the provision requiring that all disputes be resolved by arbitration.[2] The subcontract provided that Roberts was to:

Furnish and install the items listed above, complete for an acceptable job, according to the contract documents for Student Services Facility and Natatorium, Gulf Coast Community College, Panama City, Florida as issued by Briel, Rhame, Poynter & House, Project No. 7357. Includes Non-Technical Specifications A through J and Technical Specifications Division 1 through [16] and Drawing Sheet No. 1 through 155 of 155, and Addendum No. 1, 2, & 3. (emphasis supplied)
The statement in the subcontract that the furnishing and installation of materials must be completed according to the contract documents including "Non-Technical Specifications A through J" acts as an incorporation of that document or those terms into the subcontract. Non-Technical Specification I incorporates the "General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition" into the subcontract. Section 4.5.1 of this document specifically requires disputes involving the contract to be resolved by arbitration. In short, since the subcontract must be completed according to Non-Technical Specification I, which in turn incorporates the "General Conditions of the Contract for Construction, AIA Document A201, 1987 Edition," which contains the arbitration provisions, the arbitration provisions of that document are incorporated into the subcontract.
The subcontract agreement, in its entirety, is for the furnishing and installation of materials, *378 and is governed by the incorporated provisions, including the arbitration provision. There is no basis for the trial court's holding that the arbitration provisions did not govern the entire contract.
Accordingly, the trial court erred in denying Lord and Sons' motion for arbitration. The final judgment is reversed and the cause remanded for proceedings consistent herewith.
MINER, J., concurs.
JOANOS, J., dissents with written opinion.
JOANOS, Judge, dissenting.
The issue here is one of contract interpretation. My reading of the "Standard Subcontract Agreement" entered into between the contractor and subcontractor, convinces me that the trial court correctly ruled that the reference to the general conditions of the contract between the owner and the contractor was limited, because of its location in the document. It applied only to the manner in which the items provided by the subcontractor would be furnished and installed and what would constitute a complete, acceptable job. Otherwise, the relationship between the contractor and subcontractor was to be governed by the provisions in the "Standard Subcontract Agreement." The document is a printed form with space provided for certain insertions. Following the naming of the parties, the following language is typed in:
Furnish and install the items listed above, complete for an acceptable job, according to the contract documents for Student Services Facility and Natatorium, Gulf Coast Community College, Panama City, Florida as issued by Briel, Rhame, Poynter & Houser, Project No. 7357. Includes Non-Technical Specifications A through J and Technical Specifications Division 1 through 16 and Drawing Sheet No. 1 through 155 of 155, and Addendum No. 1, 2, & 3.
Contract awarded for base bid only and alternates 5, 5A and 5B price good through August 15, 1989.
This project must be complete within 450 calendar days, delays will necessitate the application of liquidated damages as noted in the contract documents and as direceted [sic] by the Architect/Owner.
Particular attention shall be directed to the paragraphs below. Failure to comply with these procedures will necessitate delay of progress payments, and, if necessary termination of the subcontract.
This is followed by fourteen printed conditions including subjects such as the number of shop drawings to be provided, the presentations of workers' compensation insurance certificates, the required quality of the work, provision for the deduction, the required presence of a competent "foreman," expense of unapproved charges, contract deduction for damage to others, cost of clean up, a release of liability of the contractor for accident caused by the subcontractor, responsibility of the subcontractor for liquidated damages charged by the owner to the contractor, restriction upon assignment of the contract, the requirement of a guarantee covering defects in labor and materials, a provision for attorney's fees in the event "legal action is instituted," and a bond requirement.
Further, nearly all of the nontechnical specifications in the contract between the contractor and the owner could not apply to the subcontractor but are matters pertaining to the owner or the contractor. There are, however, several technical provisions that address the conditions under which the subcontractor was to "furnish and install" under the subcontract.
It is a well established rule of contract law that ambiguous language should be construed against the party that drafted the contract and chose the wording. I would affirm.
NOTES
[1] Four major problems caused delays. First, concrete structural columns failed to meet stress levels and had to be redone. Second, an indoor pool failed to meet stress levels and had to be redone. Third, indoor masonry work was incorrect and had to be redone. Fourth, ceiling concrete was incorrect and had to be redone.
[2] It is the general rule of contract law that where a writing expressly refers to and sufficiently describes another document, the other document is to be interpreted as part of the writing. O.B.S. Co., Inc. v. Pace Construction Company, 558 So.2d 404 (Fla. 1990). Moreover, even if the subcontract agreement herein contains some ambiguity, all doubts as to whether the instant dispute was within the scope of the arbitration clause of the general contract should be resolved in favor of arbitration. Old Dominion Insurance Co. v. Dependable Reinsurance Co., 472 So.2d 1365 (Fla. 1st DCA 1985); see generally, Florida Construction Law and Practice § 13.8 (2d ed.); Ronbeck Construction Co., Inc. v. Savanna Club Corporation, 592 So.2d 344 (Fla. 4th DCA 1992).