647 So.2d 192 (1994)
The REGENCY GROUP, INC., Appellant,
v.
Joseph L. McDANIELS and Raymond S. Barbone, Appellees.
No. 94-509.
District Court of Appeal of Florida, First District.
July 19, 1994.
Thomas C. Dearing and Thomas B. Constantine of Leloeuf, Lamb, Greene & McRae, Jacksonville, for appellant.
C. Warren Tripp, Jr. of Bedell, Dittmar, Devault & Pillans, P.A., Jacksonville, for appellees.
PER CURIAM.
The Regency Group, Inc. (Regency) appeals from an order denying a motion to compel arbitration. The issue presented is whether the claims of Joseph L. McDaniels and Raymond S. Barbone (appellees) for payment of interest on sale proceeds were within the scope of the arbitration agreement between the parties. We find that they were, and reverse the order of the trial court.
This action arises out of the Regency's stock sale of all of the outstanding shares of capital stock of Atlantic Mortgage Investment Corp. (AMIC) to Pitney Bowes Credit Corporation (PBCC). The appellees, McDaniels and Barbone, were the president and vice president of AMIC, respectively. The Regency Group and appellees, as a result of their respective interests in AMIC, entered into an agreement dated June 19, 1992, in which appellees agreed to the sale of AMIC to PBCC. In return for release of their rights under a phantom stock ownership program and a deferred compensation plan which they had as key employees of AMIC, McDaniels and Barbone were each to receive a percentage of the final sale proceeds received by Regency. The source of monies for payments to be made by Regency to the appellees under the agreement was the stock sale proceeds paid by PBCC for the shares of AMIC stock. The stock sale proceeds were all deposited by PBCC into an escrow account.
The agreement provided that McDaniels and Barbone shall receive the respective aggregate amounts of $919,197 and $235,242, subject to the adjustments provided in this agreement. Calculation of the ultimate amount of any payments to be made by any party to the agreement is to be made in accordance with the methods set forth in Exhibit A to the agreement. Section 5(a) of the agreement states as follows:

*193 Such amounts are determined in accordance with the terms of the plans and are based upon the calculations and the assumed purchase price and closing costs set forth on Exhibit A. Accordingly, should the amount of the purchase price ultimately received by Regency or the amount of closing costs incurred by Regency vary from those amounts set forth on Exhibit A, the aggregate amounts paid to McDaniels or Barbone shall increase or decrease in accordance with the method of calculations set forth on Exhibit A.
The funds from the sale are and have been held in an interest-bearing escrow account from which distributions to Regency were made on August 19, 1992, July 22, 1993, with all remaining funds to be paid out of escrow on February 22, 1995. When monies were distributed to Regency from the escrow in August 1992 and July 1993, Regency received principal and interest earned on the funds while in escrow, and McDaniels and Barbone received only the principal; they did not receive their proportional shares of that interest. Demand was made for payment of the interest, but Regency took the position that McDaniels and Barbone were not entitled to their proportional shares of the interest and refused to make payment of the interest to McDaniels and Barbone.
McDaniels and Barbone filed suit against Regency. The complaint contained six counts, asserting two claims: One for payment of a portion of the interest accrued on the escrow stock sale proceeds (counts I, II and VI), and the other for bonus payments and salary increases (counts II, IV and V). Only the claim for payment of interest is material to this appeal.
Although the agreement contains no provision for payment by Regency to the appellees of any interest related to the stock sale proceeds, it does address payment disputes. Paragraph 5(c) of the agreement provides for resolution of disputes by binding arbitration and in pertinent part states as follows:
The parties shall use the method of calculation set forth in Exhibit A to determine the amount of payment made by any party... . Any dispute between the parties with respect to the determination of such amounts and percentage shall be settled by KPMG Peat Marwick. Any such determination by Peat Marwick shall be binding upon the parties and the fee of Peat Marwick shall be paid by the party which does not prevail in the dispute or shall be shared among the parties on a basis to be determined by Peat Marwick.
(Agreement, paragraph 5(c), page 6). Regency filed a motion to compel arbitration of counts I, II and VI under the agreement, and the trial court denied the motion, finding that
[P]aragraph 5(c) of the parties' agreement does not constitute a binding agreement to arbitrate the issue of plaintiffs' entitlement to interest, but is sufficient to constitute a binding agreement to arbitrate the determination of the amounts of payments the plaintiffs are entitled to receive.
The court's denial of the motion to compel arbitration is being appealed here.
The agreement of the parties determines the issues subject to arbitration. Pacemaker Corp. v. Euster, 357 So.2d 208 (Fla. 3d DCA 1978); Roe v. Amica Mutual Ins. Co., 533 So.2d 279 (Fla. 1988). Only those claims which the parties have agreed are arbitrable may be subject to arbitration. All American Semiconductor, Inc. v. Unisys Corp., 637 So.2d 59 (Fla. 3d DCA 1994). Public policy, however, favors arbitration because it is efficient and avoids the time delay and expense associated with litigation. See, e.g., Midwest Mutual Ins. Co. v. Santiesteban, 287 So.2d 665 (Fla. 1973). In view of such public policy, this court has expressed that when a court must decide whether a particular dispute is subject to an arbitration agreement, doubts about the scope of the agreement should be resolved in favor of arbitration. See Lord & Son Constr., Inc. v. Roberts Elec. Contractors, Inc., 624 So.2d 376, 377 n. 2 (Fla. 1st DCA 1993). See also Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); Ronbeck Constr. Co., Inc. v. Savanna Club Corp., 592 So.2d 344 (Fla. 4th DCA 1992).
In Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc., 543 So.2d 359, 362 (Fla. 1st DCA 1989), this court stated as follows:

*194 [A]ny time a contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.
Id. (quoting AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1996)) (emphasis added).
In the instant case, the arbitration clause uses broad language to describe the scope of what is to be included in the intent of the parties. The arbitration provision simply refers to "any dispute between the parties with respect to the determination of such amounts and percentages." The "amounts and percentages" referred to in the arbitration clause is defined in that same paragraph as "the amount of any payment to be made by any party."
While the entitlement to interest cannot be determined in accordance with the exhibit attached to the contract, it clearly would constitute a portion of the payment due to a party. We, therefore, cannot find with "positive assurance" that the dispute between the parties was not within the scope of the agreement to arbitrate.
The case is, therefore, reversed and remanded with directions to the trial court to enter an order compelling arbitration as to the claims encompassed within counts I, II, and VI of the complaint.
BARFIELD and ALLEN, JJ., concur.
WOLF, J., dissenting with written opinion.
WOLF, Judge, dissenting.
The broad public policy in favor of arbitration should not override the right of an individual to have legal disputes determined by a court unless there is some indication that it was the intent of the party to have the dispute resolved by means of arbitration. The parties in the instant case did not intend that the legal issue of entitlement to interest should be determined by the accounting firm of KPMG Peat Marwick (Peat Marwick). I would, therefore, affirm the decision of the trial court.
Parties to a contract may provide that only certain disputes arising out of the agreement will be subject to arbitration. Kincaid Constr. Co. v. Worsham Underground Utility Constr., 566 So.2d 600 (Fla. 5th DCA 1990). Only those claims which the parties have agreed are arbitrable should be subject to mandatory arbitration. All American Semiconductor, Inc. v. Unisys Corp., 637 So.2d 59 (Fla. 3d DCA 1994). See also Roe v. Amica Mut. Ins. Co., 533 So.2d 279 (Fla. 1988).
Section 5(c) of the agreement between the parties provides as follows:

Calculation of Payments. The parties shall use the method of calculation set forth on Exhibit A to determine the amount of any payment to be made by any party. Such calculations contemplate that any portion of the Purchase Price received by Regency shall be shared on a Percentage basis with each of McDaniels and Barbone and that any payment to be made by Regency shall be participated in on a Percentage basis by each of McDaniels and Barbone. The relevant amounts and Percentages shall be determined by utilizing the relevant figures in the method of calculation set forth on Exhibit A. Any dispute between the parties with respect to the determination of such amounts and Percentages shall be settled by KPMG Peat Marwick. Any such determination by Peat Marwick shall be binding upon the parties and the fees of Peat Marwick shall be paid by the party which does not prevail in the dispute or shall be shared among the parties on a basis to be determined by Peat Marwick.
(Emphasis added). The arbitration provision in the instant case is a limited agreement to have a selected type of dispute resolved by the named third party. Thus, this case is distinguishable from Beaver Coaches, Inc. v. Revels Nationwide R.V. Sales, Inc., 543 So.2d 359 (Fla. 1st DCA 1989), and AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986), the cases relied on by the majority. Those cases dealt with broad *195 arbitration clauses intended to apply to any dispute arising out of a contractual relationship between the parties, unlike this case where the agreement was specifically to have Peat Marwick resolve disputes concerning the calculations made pursuant to Exhibit A.
The calculations pursuant to Exhibit A were to be made only if the purchase price and closing costs involved in the sale of Atlantic Mortgage and Investment Corporation varied from the estimated amounts stated in the contract. The payments and calculations envisioned by Exhibit A were mathematical calculations based on the net proceeds of the sale to determine the appropriate portion of the sale price to be paid to each party. This methodology would be within the expertise of the accounting firm of Peat Marwick.
Exhibit A and section 5, however, are silent as to appellees' entitlement to their proportionate share of interest accrued while the proceeds from the purchase price are being held in escrow. This determination cannot be made by simple calculation, but rather involves a legal question concerning interpretation of the contract which I do not believe the parties intended to be resolved by Peat Marwick.