# Third District Court of Appeal

## State of Florida

Opinion filed January 15, 2025.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-0326
Lower Tribunal No. 21-31046-CC-25
_____

**Seduction Cosmetic Center Corp.,**
Appellant,

vs.

**Von Dunbar,**
Appellee.

An Appeal from a non-final order from the County Court for Miami-Dade County, Patricia Marino Pedraza, Judge.

Lalchandani Simon, PL, and Kubs Lalchandani, and Daniel E. Davis, for appellant.

Von Dunbar, in proper person.

Before SCALES, MILLER, and GOODEN, JJ.

GOODEN, J.

This case involves contract interpretation. We must determine whether the claim between the parties falls within the arbitration agreement. Based on the broad wording of the agreement, we find that an arbitrable issue exists.

**I.**

Von Dunbar sought to undergo several elective, cosmetic procedures at Seduction Cosmetic Center. In her surgical packet, she signed several documents which included two identical arbitration agreements. The agreements read as follows:

## AGREEMENT TO ARBITRATE NON-MEDICAL NEGLIGENCE CLAIMS

As a condition of obtaining services at the facilities of Seduction Cosmetic Center Corp. (the "Company"), you ("Patient") hereby enter this Agreement to Arbitrate Non-Medical Negligence Claims (this "Agreement") and hereby agree to the each of the following terms:

### Article I: Agreement to Arbitrate

(a) Patient hereby agrees and understands that, except as specifically set forth in paragraph (b) below, any and all claims arising out of or related to the relationship between Company and Patient will be determined by submission to arbitration as provided by the Florida Arbitration Code, Chapter 682, Florida Statutes.

(b) Notwithstanding the foregoing, no "claim for medical negligence" as defined in § 766.106(1)(a), Fla. Stat., or any action to collect a fee from Patient, shall be subject to this Agreement.

2

. . .

**Article 2: All Claims Must Be Arbitrated.**  It is the intention of the parties that this Agreement bind all parties, including any spouse, children, or heirs of the Patient, whose claims may arise out of or relate to services provided by Company, its officers, directors, principals, employees, agents, affiliates, successors, estates, or assigns.   The filing of any action in any court by Company or any agent, assign, or affiliate thereof, to collect any fee from Patient shall not waive the right to compel arbitration of any other claim subject to arbitration hereunder.

. . .

**Article 4: General Provisions.**  All claims based upon the same incident, transaction or related circumstances shall be arbitrated in one proceeding.  A claim shall be waived and forever barred if (1) on the date notice thereof is received, the claim, if asserted in a civil action, would be barred by the applicable Florida statute of limitations, or (2) the claimant fails to pursue the arbitration claim in accordance with the procedures prescribed herein with reasonable diligence. With respect to any matter not herein expressly provided for, the arbitrators shall be governed by the Florida Rules of Civil Procedure provisions relating to arbitration.

**Article 5: Retroactive Effect**. Patient agrees that any controversy, unless expressly excluded in this Agreement, arising out of or relating to any prior contractual or other relationship with Company, or services performed or to have been performed by Company, shall be submitted to binding arbitration.

. . .

**COMPANY AND PATIENT HEREBY GIVE UP THEIR CONSTITUTIONAL RIGHT TO HAVE ANY DISPUTE UNDER THIS AGREEMENT DECIDED IN A COURT OF LAW BEFORE A JURY, AND INSTEAD ARE ACCEPTING THE USE OF BINDING ARBITRATION.**

However, Dunbar was unable to obtain medical clearance and the surgery was cancelled. As a result, she lost her deposit of $11,292.10. Dunbar filed suit for breach of contract to recover these monies.

Seduction Cosmetic Center moved to compel arbitration and stay proceedings. Dunbar focused on the word "services" in Article 2 of the agreement. She claimed that no services were provided as she did not have the surgery; therefore, the arbitration clause was not triggered. Seduction Cosmetic Center sharply disagreed and explained that it did provide pre-surgery services, such as a physical examination, photographs, and consultations. It also argued that, even if services were not provided, the dispute fell within the broad arbitration clause set forth in Article 1.

The trial court initially denied the motion without a hearing. Seduction Cosmetic Center appealed. Without commenting on the merits of the parties' arguments, we reversed and remanded for an evidentiary hearing. Seduction Cosmetic Ctr. Corp. v. Dunbar, 389 So. 3d 606, 607 (Fla. 3d DCA 2023).

After conducting the evidentiary hearing, the trial court denied the motion and held that no arbitrable issue existed. It accepted Dunbar's arguments, focusing solely on whether services were provided, and found none were. Seduction Cosmetic Center appeals this order.

## II.

Our review of an order denying arbitration is de novo. Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018). See also Telemundo Media, LLC v. Mintz, 194 So. 3d 434, 435 (Fla. 3d DCA 2016) ("This Court reviews a trial court's interpretation of a contract de novo.").

## III.

"[T]here are three elements for courts to consider in ruling on a motion to compel arbitration of a given dispute: (1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999). This case turns on the second factor. We must determine whether the dispute between the parties falls within the arbitration agreement.

"Arbitration provisions are contractual in nature and remain a matter of contractual interpretation. The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013) (internal citations omitted). "A natural corollary of this rule is that no party may be forced to

5

submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert, 750 So. 2d at 636. See also Miller v. Roberts, 682 So. 2d 691, 692 (Fla. 5th DCA 1996) ("The general rule is that where an arbitration agreement exists between the parties, arbitration is required only of those controversies or disputes which the parties have agreed to submit to arbitration."); Regency Grp., Inc. v. McDaniels, 647 So. 2d 192, 193 (Fla. 1st DCA 1994) ("Only those claims which the parties have agreed are arbitrable may be subject to arbitration.").

Florida classifies arbitration clauses as either narrow or broad. Because the subject contract includes the words "arising out of or relating to," it is classified as a broad arbitration clause. Jackson, 108 So. 3d at 593.

Broad clauses encompass those claims that have a significant relationship to the contract. Id.

> [A] significant relationship is described to exist between an arbitration provision and a claim if there is a "contractual nexus" between the claim and the contract. A contractual nexus exists between a claim and a contract if the claim presents circumstances in which the resolution of the disputed issue requires either reference to, or construction of, a portion of the contract. More specifically, a claim has a nexus to a contract and arises from the terms of the contract if it emanates from an inimitable duty created by the parties' unique contractual relationship.

Id. (internal citations omitted). See, e.g., O'Keefe Architects, Inc. v. CED Constr. Partners, Ltd., 944 So. 2d 181, 188 (Fla. 2006) ("In this case, the

6

parties agreed to a broad provision that requires arbitration of '[c]laims, disputes, and other matters . . . arising out of or relating to' the contract."); Hedden v. Z Oldco, LLC, 301 So. 3d 1034, 1039 (Fla. 2d DCA 2019) ("The arbitration provision, in contrast, is broad, requiring arbitration of '[a]ny dispute, controversy or claim arising out of or relating to' the Compensation Agreement.").

This broad clause is qualified in one manner—it eliminates medical malpractice claims and collection actions against the patient from those disputes that are arbitrable. This action qualifies as neither of those. Indeed, Dunbar filed suit for breach of contract for return of the deposit made under that very same contract. This will involve interpretation of the contract. This claim has a nexus to the contract and arises from the very terms thereof. Because this claim has a significant relationship to the contract, an arbitrable issue exists. Jackson, 108 So. 3d at 593; Seifert, 750 So. 2d at 640.

Ignoring Article 1's broad arbitration clause and the significant relationship, the trial court focused on Article 2. It found that no services were provided because no surgery occurred. Therefore, it held that the arbitration clause was not triggered.

However, this is a misreading of the contract. It focuses on an isolated word and does not give effect to the entire contract. See Antonin Scalia &

7

Bryan Garner, Reading Law: The Interpretation of Legal Texts 167 (2014) ("Perhaps no interpretative fault is more common than the failure to follow the whole-text canon, which calls on the judicial interpreter to consider the entire text, in view of its structure and of the physical and logical relation of its many parts."); McGhee Interests v. Alexander Nat'l Bank, 135 So. 545, 548 (Fla. 1931) ("And the contract itself, being in writing, must be construed as a whole."); Canal Lumber Co. v. Florida Naval Stores & Mfg. Co., 92 So. 279, 281 (Fla. 1922) ("It is not enough to look to an isolated phrase or paragraph of the contract in an effort to determine its true meaning.").

When the entirety of the agreement is examined, there are structural and textual clues which show that this agreement is not limited in that manner. As noted above, Article 1 contains a broad arbitration clause that applies to "any and all claims arising out of or related to the relationship between Company and Patient." Further, Article 2 has the heading: "All Claims Must be Arbitrated." Scalia & Garner, supra at 221 ("The . . . headings are permissible indicators of meaning."). Article 4 says, "all claims based upon the same incident, transaction or related circumstance shall be arbitrated in one proceeding." Turning to Article 5, the agreement states: "Patient agrees that any controversy . . . arising out of or relating to any prior contractual or other relationship with the company . . . shall be submitted to

arbitration." Lastly, the agreement—in all caps and bold font—advises that the company and patient give up their constitutional right to go to court and accept the use of binding arbitration.

Without any textual analysis, the trial court too narrowly defined "services." It found that the surgeries were the only services that fell within the agreement. This is not a fair reading. Ham v. Portfolio Recovery Assocs., LLC, 308 So. 3d 942, 947 (Fla. 2020). It would render the contract virtually meaningless. Scalia & Garner, supra at 31 ("A fundamental rule of textual interpretation is that neither a word nor a sentence may be given a meaning that it cannot bear."); id. at 174 ("If possible, every word and every provision is to be given effect . . . . None should needlessly be given an interpretation that causes it . . . to have no consequence."). It ignores what occurs at a clinic or doctor's office. No reasonable reader would interpret it in that limited manner.

"Services" are much broader than that. See Black's Law Dictionary 1643 (11th ed. 2019) (defining service as: "Labor performed in the interest or under the direction of others; specifically, the performance of some useful act or series of acts for the benefit of another, usually, for a fee . . . . In this sense, service denotes an intangible commodity in the form of human effort, such as labor, skill, or advice."); Merriam-Webster Dictionary 456 (11th ed.

2019) ("Service . . . the act, fact, or means of serving; performance of official or professional duties."). See also § 812.012(6), Fla. Stat. (2019) ("'Services' means anything of value resulting from a person's physical or mental labor or skill, or from the use, possession, or presence of property, and includes . . . Professional services."); § 825.101(14), Fla. Stat. (2019) (same). Clearly, pre-operative consultations, medical examinations, and photographs involve human effort. They involve labor, skill, and advice, and are part of providing those professional services.

Our conclusion is supported by the other documents Dunbar executed in the surgery packet during this transaction. See Citicorp Real Estate, Inc. v. Ameripalms 6B GP, Inc., 633 So. 2d 47, 49 (Fla. 3d DCA 1994) ("The law is well established that two or more documents executed by the same parties, at or near the same time, and concerning the same transaction or subject matter are generally construed together as a single contract."). For instance, the surgery contract provides: "This contract requires a fee of $500.00 USD . . . Any amount given by the patient under this contract will be used to cover services rendered to the patient for Initial Consultation with Trained Medical Experience Staff or Surgeon." This necessarily contemplates that services were rendered during that consultation.

Furthermore, the documents use the term "procedure" or "surgery" when referring to the surgery—not "services." The parties treated the terms differently throughout. Scalia & Garner, <u>supra</u> at 170 ("A word or phrase is presumed to bear the same meaning throughout the text; a material variation in terms suggests a variation in meaning."). The trial court erred by treating them as one and the same.

Based on our plain reading of the contract, an arbitrable issue exists. The trial court erred in its interpretation of this contract. As a result, we reverse and remand with directions to the trial court to enter an order compelling arbitration.

Reversed and remanded with directions.