# Third District Court of Appeal

## State of Florida

Opinion filed August 8, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D18-478
Lower Tribunal No. 17-25827
_____

**Duty Free World, Inc., et al.,**
Appellants,

vs.

**Miami Perfume Junction, Inc., et al.,**
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Daryl E. Trawick, Judge.

Holland & Knight LLP, and J. Raul Cosio and Rebecca M. Plasencia, for appellants.

Akerman LLP, and Gerald B. Cope, Jr., Ilana Tabacinic, and Erika R. Shuminer, for appellees.

Before LAGOA, EMAS, and FERNANDEZ, JJ.

LAGOA, J.

Duty Free World Inc. ("DFW"), Duty Free World Inflight, Inc. ("Inflight")

(collectively, "the DFW Companies"), Mayra Del Valle, and Leylani Cardoso

appeal the trial court's order denying their motion to compel arbitration.[1]  For the following reasons, we hold that the trial court erred in denying the motion to compel arbitration and reverse.

I.     FACTUAL AND PROCEDURAL HISTORY

Doral International Products, LLC ("Doral"), and Miami Perfume Junction, Inc. ("MPJ"), are affiliated entities engaged in the purchase and sale of cosmetics, perfumes, and similar products on a wholesale basis.  The DFW Companies are also engaged in the purchase and sale of cosmetics, perfumes, and similar products on a wholesale and retail basis.  The DFW Companies obtain their products directly from the vendor or manufacturer and, in turn, sell the products to other companies, such as Doral and MPJ.

As of November 21, 2012, the DFW Companies were indebted to Doral in the total amount of $6,000,000.  On November 21, 2012, the DFW Companies and Doral entered into a Supply Agreement and a Reimbursement Agreement (the "2012 Agreements") for the purpose of addressing the DFW Companies' repayment of their $6,000,000 obligation to Doral.[2]  Under the Supply Agreement

---

[1] During the pendency of this appeal, the parties agreed that the claims against the individual defendants, Mayra Del Valle and Leylani Cardoso, would proceed in arbitration.  Our discussion is therefore limited to the issues concerning the corporate entities.

[2]  Although not a signatory to the 2012 Agreements, MPJ concedes in its Answer Brief that a reversal of the trial court's order denying the DFW Companies' motion to compel arbitration means that "both plaintiffs' claims must proceed in arbitration."

2

between Doral and DFW, DFW agreed to make available to Doral a minimum of $6,000,000 of products in each calendar quarter, and Doral agreed to purchase a minimum of $6,000,000 of products in each calendar quarter (referred to as "the Minimum Purchase Requirement"). The Supply Agreement also provided that fifteen percent of the purchase price of the ordered products would be paid by crediting that percentage against the balance of the DFW's $6,000,000 obligation. The credit was subsequently reduced to ten percent. Under the Reimbursement Agreement between Doral and the DFW Companies, the DFW Companies acknowledged their joint and several liability to Doral for the $6,000,000 and agreed that the obligation would be paid to Doral pursuant to the terms of the 2012 Agreements. As a result of the 2012 Agreements, the $6,000,000 obligation was reduced to $633,615.90 as of February 10, 2017.

The 2012 Agreements contain an identical arbitration clause. That clause states that the parties will first attempt to mediate "any claim, controversy or dispute among the parties with respect to the construction, application or enforcement of this Agreement or arising out of a breach hereof . . . ." If mediation is unsuccessful, the dispute must be submitted to binding arbitration. The arbitration clause contains an exception that provides the parties the right to seek equitable relief in the state or federal courts in Miami-Dade County:

> If the parties are unable to amicably resolve their disputes within 30 days of submitting the dispute to mediation, the dispute, except actions seeking injunctive or emergency

3

> relief shall be submitted, at the request of either party, to binding arbitration by a single arbitrator . . . . **Notwithstanding the foregoing**, each party shall have the right to seek **equitable** or emergency **relief** in the state or federal courts in Miami-Dade County, Florida, in order to protect any rights enforceable by injunctive or other equitable relief. . . . The parties hereby waive any bond requirements for obtaining equitable relief, without bond.

(emphasis added).

On October 2, 2017, DFW initiated an arbitration proceeding against Doral, claiming that Doral breached the Supply Agreement "by failing to purchase products from DFW in accordance with the terms and conditions specified by the Supply Agreement." On November 6, 2017, Doral filed a counterclaim in the arbitration proceeding alleging breach of contract, civil theft, conversion, and fraudulent misrepresentation. In its breach of contract count, Doral claimed that between October 3, 2016, and February 10, 2017, Doral ordered, and MPJ pre-paid for, products from the DFW Companies pursuant to the Supply Agreement. Doral alleged that MPJ paid $2,683,252.80 for products that were never delivered and that "[t]he DFW Companies substantially and materially breached the 2012 Agreements by, among other things, failing to deliver products to Doral after receiving Purchase Orders for goods along with the requisite payments." Doral claimed that it incurred "actual and substantial damages."

On the same day that Doral filed its counterclaim in the arbitration proceeding, Doral and MPJ filed a complaint in the circuit court for Miami-Dade

4

County asserting a claim for unjust enrichment against the DFW Companies. By way of summary, Doral and MPJ alleged that the DFW Companies' representations and omissions induced Doral and MPJ to place purchase orders for products between October 3, 2016, and February 10, 2017, but that the DFW Companies delivered only a fraction of the products ordered. As a result, Doral and MPJ allegedly paid $2,683,252.80 for undelivered products. Doral and MPJ alleged that "it would be inequitable for the DFW Companies to retain [Doral and MPJ's] monies, without delivering the requisite products to [Doral and MPJ]," and sought a judgment against the DFW Companies "for equitable relief, including disgorgement."

The DFW Companies filed a motion to compel arbitration in the circuit court, arguing that Doral and MPJ's unjust enrichment claim was subject to the mandatory arbitration clause contained in the 2012 Agreements. In their response in opposition, Doral and MPJ argued that their unjust enrichment claim falls squarely within the arbitration clause's exception providing that the parties have the right to "seek equitable . . . relief" in the circuit court.

The trial court conducted a hearing on February 27, 2018. On March 7, 2018, the trial court entered its Order Denying Defendants' Motion to Compel Arbitration. The trial court found that "Plaintiffs' claim for unjust enrichment is not subject to arbitration based on the express carve-out contained within the

5

Arbitration Clause which permits Plaintiffs to 'seek equitable relief' from this Court." The DFW Companies' timely appeal ensued.[3]

## II.   STANDARD OF REVIEW

This Court reviews an order granting or denying a motion to compel arbitration de novo. Mukamal v. Marcum, LLP, 223 So. 3d 422, 425 n.3 (Fla. 3d DCA 2017); Apartment Inv. & Mgmt. Co. v. Flamingo/South Beach 1 Condo. Ass'n, 84 So. 3d 1090, 1092 (Fla. 3d DCA 2012); Roth v. Cohen, 941 So. 2d 496, 499 (Fla. 3d DCA 2006).

## III.   ANALYSIS

"When considering a motion to compel arbitration, three factors need to be considered: (1) whether a valid agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitration was waived." Roth, 941 So. 2d at 499 (citing Seifert v. U.S. Home Corp., 750 So. 2d 633, 636 (Fla. 1999)). "Arbitration provisions are contractual in nature and remain a matter of contractual interpretation. The intent of the parties to a contract, as manifested in the plain language of the arbitration provision and contract itself, determines whether a dispute is subject to arbitration." Jackson v. Shakespeare Found., Inc., 108 So. 3d 587, 593 (Fla. 2013) (citation omitted). In considering a motion to compel arbitration, "all doubts should be resolved in favor of arbitration." CT

---

[3] On March 27, 2018, the trial court entered an order staying the proceedings below until the conclusion of the instant appeal.

Miami, LLC v. Samsung Elecs. Latinoamerica Miami, Inc., 201 So. 3d 85, 90 (Fla. 3d DCA 2015); accord Apartment Inv. & Mgmt. Co., 84 So. 3d at 1092. It is equally true, however, "that no party may be forced to submit a dispute to arbitration that the party did not intend and agree to arbitrate." Seifert, 750 So. 2d at 636; see also Regency Grp., Inc. v. McDaniels, 647 So. 2d 192, 193 (Fla. 1st DCA 1994) ("The agreement of the parties determines the issues subject to arbitration."). Thus, "'where parties bargain for and/or contemplate exceptions to arbitration in their contracts, their intentions should control.'" Apartment Inv. & Mgmt. Co., 84 So. 3d at 1092 (quoting Rath v. Network Mktg., L.C., 790 So. 2d 461, 465 (Fla. 4th DCA 2001)).

The instant case concerns the second factor to be considered on a motion to compel arbitration—whether an arbitrable issue exists. Specifically, the issue before us is whether Doral and MPJ's unjust enrichment claim falls within the arbitration clause's exception permitting the parties to "seek equitable . . . relief" in the circuit court.

"'The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred a benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without first paying the value thereof to the plaintiff.'" Agritrade, LP v. Quercia, 42 Fla. L. Weekly D2514, D2516 (Fla. 3d DCA Nov. 29, 2017) (quoting

7

Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., 667 So. 2d 876, 879 (Fla. 3d DCA 1996)), rev. denied, No. SC17-2294, 2018 WL 1256501 (Fla. Mar. 12, 2018). The basis of the remedy of unjust enrichment is to provide restitution where one person has been unjustly enriched at the expense of another. See id. ("'At the core of the law of restitution and unjust enrichment is the principle that a party who has been unjustly enriched at the expense of another is required to make restitution to the other.'" (quoting Gonzalez v. Eagle Ins. Co., 948 So. 2d 1, 3 (Fla. 3d DCA 2006))); see also Ala v. Chesser, 5 So. 3d 715, 718 (Fla. 1st DCA 2009) ("A claim for unjust enrichment seeks restitution from a party allegedly unjustly enriched."); Circle Fin. Co. v. Peacock, 399 So. 2d 81, 84 (Fla. 1st DCA 1981) ("Unjust enrichment is characterized as the effect of a failure to make restitution for property received by one under such circumstances as to give rise to a legal or equitable obligation, thereby requiring such person to account for his retention of the property."); Moore Handley, Inc. v. Major Realty Corp., 340 So. 2d 1238, 1239 (Fla. 4th DCA 1976) (finding that a count seeking a judgment for monies wrongfully received states a cause of action for "'restitution' to prevent 'unjust enrichment'").

We begin our analysis with an acknowledgment that this Court and others have stated that "the theory of unjust enrichment is equitable in nature." Bowleg v. Bowe, 502 So. 2d 71, 72 (Fla. 3d DCA 1987); accord Tooltrend, Inc. v. CMT Utensili, SRL, 198 F.3d 802, 805 (11th Cir. 1999) ("A claim for unjust enrichment

is an equitable claim . . . ."); <u>CEMEX Constr. Materials Fla., LLC v. Armstrong World Indus., Inc.</u>, No. 3:16-CV-186-J-34JRK, 2018 WL 905752, at \*12 (M.D. Fla. Feb. 15, 2018) ("A claim for unjust enrichment is equitable in nature . . . ."); <u>Ala</u>, 5 So. 3d at 719-20 ("Remedying unjust enrichment is affording equitable relief."); <u>Hall v. Humana Hosp. Daytona Beach</u>, 686 So. 2d 653, 656 (Fla. 5th DCA 1996) ("An action for money had and received, or the more modern action for unjust enrichment, is an equitable remedy requiring proof that money had been paid due to fraud, misrepresentation, imposition, duress, undue influence, mistake, or as a result of some other grounds appropriate for intervention by a court of equity."(citation omitted)).

As the Fourth District Court of Appeal explained in <u>Commerce Partnership 8098 Ltd. Partnership v. Equity Contracting Co., Inc.</u>, 695 So. 2d 383 (Fla. 4th DCA 1997) (en banc), however, the use of the term "equitable" in reference to an unjust enrichment claim denotes fairness and does not mandate that unjust enrichment be construed as seeking only an equitable, as opposed to a legal, remedy. In <u>Commerce Partnership</u>, the Fourth District addressed the difference between a contract implied in fact and a contract implied in law. In discussing the legal history of contracts implied in law, the court stated that under the common law "[t]he action of assumpsit was available for the 'recovery of damages for the breach or non-performance of a simple contract . . . or upon a contract implied by law from the acts or conduct of the parties.'" <u>Id.</u> at 386-87 (quoting <u>Hazen v.</u>

9

Cobb, 117 So. 853, 857 (Fla. 1928)). In reversing a judgment entered in favor of the subcontractor against the owner on the subcontractor's claim for "quantum meruit," the court found that cases from other states that "rely on the principle that there can be no remedy in equity when the [construction] lien statute provides an adequate remedy at law" do not apply in Florida because:

> [t]hese cases turn on the determination that unjust enrichment is an equitable cause of action. However, in Florida, as was demonstrated above, all implied contract actions were part of the action of assumpsit, which was an action at law under the common law. **Although some Florida courts have described quasi contracts as being "equitable in nature," the term has been used in the sense of "fairness," to describe that quality which makes an enrichment unjust, and not as a reference to the equity side of the court**.

Id. at 389-90 (emphasis added) (citations omitted).

Indeed, the principle set forth in Commerce Partnership that unjust enrichment is an action at law has been applied in cases where the plaintiff sought damages for unjust enrichment. See M.I. Indus. USA Inc. v. Attorneys' Title Ins. Fund, Inc., 6 So. 3d 627, 629 (Fla. 4th DCA 2009) (finding that trial court erred in denying motion to dissolve injunction preventing transfer of funds in bank account where plaintiff sought damages for unjust enrichment and stating that, in denying motion for rehearing, "this court has squarely held that an action for unjust enrichment is an action at law"); American Safety Ins. Serv., Inc. v. Griggs, 959 So. 2d 322, 331 (Fla. 5th DCA 2007) (stating that compensatory damages under a

10

claim for quasi contract cannot be awarded simply by appealing to the court's powers in equity and that "an action for unjust enrichment is an action at law, not in equity"); Della Ratta v. Della Ratta, 927 So. 2d 1055, 1060 (Fla. 4th DCA 2006) (finding that claim seeking an award of damages for unjust enrichment measured by the value of the repairs and capital improvements made to condominium "was an action at law" for damages).

Our analysis does not end here, however, because unlike the cases cited above where the plaintiff sought damages, Doral and MPJ purport to seek a judgment for "equitable relief, including disgorgement." Because "[a] claim for unjust enrichment seeks restitution," Ala, 5 So. 3d at 718, we turn for guidance to the United States Supreme Court's decision in Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), which addressed the difference between legal and equitable forms of restitution.[4]

In Great-West, the respondent was severely injured in a car accident. Id. at 207. The respondent's medical expenses were paid by an insurance plan provided by the respondent's husband's employer. Id. The insurance plan "covered

---

[4] See also Restatement (Third) of Restitution and Unjust Enrichment § 4 (Am. Law Inst. 2011) (discussing the legal versus equitable nature of restitution and unjust enrichment, and noting in Reporter's Note comment b that "[t]he mixed [legal and equitable] ancestry of modern-day restitution and unjust enrichment is recognized correctly by some current decisions" such as the United States Supreme Court's decision in Great-West, which "distinguish[ed] 'restitution *at law* through an action derived from the common-law writ of assumpsit' from 'restitution *in equity*, ordinarily in the form of a constructive trust or an equitable lien'" (quoting Great-West, 534 U.S. at 213)).

11

$411,157.11 of [respondent's] medical expenses, of which all except $75,000 was paid by petitioner Great-West Life & Annuity Insurance Co. ("Great-West Life") pursuant to a 'stop-loss' insurance agreement with the [insurance] Plan" and included a reimbursement provision stating that the plan "shall have 'the right to recover from the [beneficiary] any payment for benefits' paid by the Plan that the beneficiary is entitled to recover from a third party." Id. The insurance plan assigned to petitioner Great-West Life its rights under the reimbursement provision. Id. The respondent subsequently obtained a settlement in a tort action, the proceeds of which were disbursed to a special needs trust and into respondent's attorney's trust fund in order to pay respondent's creditors. Id. at 207-08.

The petitioners[5] sought relief under section 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), which authorizes a civil action "'by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates . . . the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of . . . the terms of the plan.'" Great-West, 534 U.S. at 209 (alteration in original) (quoting 29 U.S.C. § 1132(a)(3) (1994)). Specifically, the petitioner, Great-West Life sought "injunctive and declaratory relief under § 502(a)(3) to enforce the

---

[5] In an amended complaint, Great-West Life added both the Respondent's husband's employer and the Plan as plaintiffs.

reimbursement provision of the Plan by requiring the [respondent] to pay the Plan $411,157.11 of any proceeds recovered from third parties." Id. at 208.

The issue before the Supreme Court, therefore, was whether the petitioners' claim for restitution constituted "equitable relief" available under section 502(a)(3) of ERISA or legal relief not available under that section. See id. at 218 ("Respecting Congress's choice to limit the relief available under § 502(a)(3) to 'equitable relief' requires us to recognize the difference between legal and equitable forms of restitution."). The Supreme Court explained:

> [N]ot all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. See, e.g., 1 Dobbs § 1.2, at 11; id., § 4.1(1), at 556; id., § 4.1(3), at 564-565; id., §§ 4.2-4.3, at 570-624; 5 Corbin § 1102, at 550; Muir, ERISA Remedies: Chimera or Congressional Compromise?, 81 Iowa L. Rev. 1, 36-37 (1995); Redish, Seventh Amendment Right to Jury Trial: A Study in the Irrationality of Rational Decision Making, 70 Nw. U.L. Rev. 486, 528 (1975). Thus, "restitution is a legal remedy when ordered in a case at law and an equitable remedy . . . when ordered in an equity case," and whether it is legal or equitable depends on "the basis for [the plaintiff's] claim" and the *nature of the underlying remedies sought*. Reich v. Continental Casualty Co., 33 F.3d 754, 756 (C.A.7 1994) (Posner, J.).
>
> In cases in which the plaintiff "could *not* assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him," the plaintiff had a right to restitution *at law* through an action derived from the common-law writ of assumpsit. 1 Dobbs § 4.2(1), at

13

571. See also Muir, supra, at 37. In such cases, *the plaintiff's claim was considered legal because he sought "to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money."* Restatement of Restitution § 160, Comment a, pp. 641-642 (1936). Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).

Id. at 212-13 (emphasis added). In contrast, "where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession," a plaintiff could seek restitution in equity. Id. at 213.

A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where "the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor," and the plaintiff "cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant]." Restatement of Restitution, supra, § 215, Comment a, at 867. *Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession.*

Id. at 213-14 (alteration in original) (emphasis added).

The Supreme Court held that because the petitioners were "seeking legal relief—the imposition of personal liability on respondents for a contractual

14

obligation to pay money—§ 502(a)(3) does not authorize this action." Id. at 221.

In reaching its conclusion the Supreme Court reasoned:

> Here, the funds to which petitioners claim an entitlement under the Plan's reimbursement provision—the proceeds from the settlement of respondents' tort action—are not in respondents' possession. . . . The basis for petitioners' claim is not that respondents hold particular funds that, in good conscience, belong to petitioners, but that petitioners are contractually entitled to *some* funds for benefits that they conferred. The kind of restitution that petitioners seek, therefore, is not equitable—the imposition of a constructive trust or equitable lien on particular property—but legal—the imposition of personal liability for the benefits that they conferred upon respondents.

Id. at 214 (emphasis in original).

Applying these principles to the instant case, we conclude that Doral and MPJ's unjust enrichment claim does not fall within the arbitration clause's exception for "equitable . . . relief" such that the claim may properly proceed in circuit court. At the outset, we agree with the Fourth District's reasoning in Commerce Partnership that the "equitable" nature of an unjust enrichment claim denotes only "that quality which makes an enrichment unjust, and [is] not . . . a reference to the equity side of the court." 695 So. 2d at 390. An examination of the substantive allegations of the complaint shows that Doral and MPJ do not seek equitable relief. Specifically, Doral and MPJ allege that they conferred a benefit upon the DFW Companies by paying $2,683,252.80 under specific purchase orders for products the DFW Companies refused to deliver. They also allege that despite

15

"multiple requests and a formal demand letter, the DFW Companies have refused to deliver the products that Plaintiffs have paid for (or to return Plaintiffs' money), which is the subject of this action." Doral and MPJ further allege that "it would be inequitable for the DFW Companies *to retain Plaintiffs' monies*, without delivering the requisite products to Plaintiffs." (emphasis added). Doral and MPJ's unjust enrichment claim, therefore, seeks nothing more than money to compensate them for payments made under the purchase orders. In other words, Doral and MPJ seek "the imposition of personal liability for the benefits that they conferred upon [the DFW Companies]." Great-West, 534 U.S. at 214. Under these circumstances, Doral and MPJ's unjust enrichment claim seeks legal, rather than equitable, relief. See id. at 213 (stating that action for restitution was considered legal where plaintiff "sought 'to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money'" and that "[s]uch claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied)" (quoting Restatement of Restitution § 160 cmt. a (1936)); Restatement (Third) of Restitution and Unjust Enrichment § 4 cmt. d (Am. Law Inst. 2011) ("The standard legal remedy for a liability based on unjust enrichment is a judgment for money, to be satisfied from the assets of the defendant by the ordinary procedures of execution.").

Critical to our conclusion that Doral and MPJ do not seek equitable relief is the fact that that Doral and MPJ do not allege that the $2,683,252.80 can "clearly

16

be traced to particular funds or property in [the DFW Companies'] possession." Great-West, 534 U.S. at 213. As the Supreme Court explained in Great-West, a claim for restitution in equity ordinarily takes the form of a constructive trust or an equitable lien in order "to restore to the plaintiff particular funds or property in the defendant's possession." Id. at 213-14. Here, Doral and MPJ do not allege that the DFW Companies hold the particular funds paid under the purchase orders or that the DFW Companies possess particular property "identified as belonging in good conscience to" Doral and MPJ. Indeed, Doral and MPJ allege that "their funds were used in part to pay wholly unrelated outstanding obligations of the DFW Companies rather than to pay the suppliers for the products ordered by Plaintiffs." Where "'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,'" and restitution will not lie in equity. Id. (alterations in original) (quoting Restatement of Restitution § 215 cmt. a (1936)).

Finally, the fact that Doral and MPJ's prayer for relief seeks "equitable relief, including disgorgement" does not alter our conclusion. "Disgorgement is an equitable remedy intended to prevent unjust enrichment." S.E.C. v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014); see also Cushman & Wakefield, Inc. v. Office Depot, Inc., No. 08-80321-CIV-MIDDLEBROOKS/JOHNSON, 2008 WL 11409887, at *3 (S.D. Fla. Nov. 3, 2008) ("Disgorgement is a remedy for an unjust enrichment action, and not an independent cause of action."); Montage Grp.,

17

Ltd. v. Athle–Tech Comp. Sys., Inc., 889 So. 2d 180, 196 (Fla. 2d DCA 2004) (finding remedy of disgorgement was appropriate for unjust enrichment claim). The equitable remedy of disgorgement is measured by the defendant's ill-gotten profits or gains rather than the plaintiff's losses. See S.E.C. v. Levin, 849 F.3d 995, 1006 (11th Cir. 2017) (concluding that disgorgement amount was properly based upon the defendant's gains and not the investors' losses); Ellett Bros. v. U.S. Fid. & Guar. Co., 275 F.3d 384, 388 (4th Cir. 2001) ("Restitution and disgorgement require payment of the defendant's ill-gotten gain, not compensation of the plaintiff's loss."); Restatement (Third) of Restitution and Unjust Enrichment § 49 cmt. a ("[D]isgorgement rules . . . shift the focus of the remedy from measuring the value of a benefit to measuring the profits derived from wrongful conduct . . . ."); see also Waldrop v. Southern Co. Serv., Inc., 24 F.3d 152, 157 (11th Cir. 1994) ("[D]amages are equitable when 'they are restitutionary, such as in "action[s] for disgorgement of improper profits."'" (quoting Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 570 (1990))); King Mountain Condo. Ass'n v. Gundlach, 425 So. 2d 569, 572 (Fla. 4th DCA 1982) (holding that disgorgement of secret profits as a remedy for breach of fiduciary duty is equitable in nature).

Doral and MPJ's factual allegations do not support their characterization of the relief sought as disgorgement. As Doral and MPJ acknowledged at oral argument, they do not plead any untoward profit to the DFW Companies in their

18

complaint. As alleged in their complaint, what Doral and MPJ seek is the restitution of the benefit they allegedly conferred upon the DFW Companies, i.e., the $2,683,252.80 paid to the DFW Companies by placing the purchase orders. At oral argument, Doral and MPJ argued, for the first time, that to the extent the DFW Companies used the payments to buy other products and subsequently made a resulting profit, Doral and MPJ are entitled to that profit. This argument, however, is belied by the allegations in the complaint—Doral and MPJ allege that the DFW Companies used the payments made under the purchase orders "to pay wholly unrelated outstanding obligations of the DFW Companies." Thus, Doral and MPJ's factual allegations establish that their unjust enrichment claim does not seek the profits (if any) produced by the payments made under the purchase orders and therefore does not seek the equitable remedy of disgorgement.

IV. CONCLUSION

For the foregoing reasons, we find that Doral and MPJ's unjust enrichment claims seeks legal, rather than equitable, relief and therefore the arbitration clause's exception permitting the parties to seek "equitable . . . relief" in Miami-Dade state court does not apply here. Accordingly, we hold that the trial court erred in denying the DFW Companies' motion to compel arbitration, and we further hold that Doral and MPJ's unjust enrichment claim may proceed only in the parties' arbitration proceeding.

Reversed.

19