# Third District Court of Appeal

## State of Florida

Opinion filed March 17, 2021.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D20-1280
Lower Tribunal No. 20-8460
_____

## Kratos Investments LLC, et al.,

Appellants,

vs.

## ABS Healthcare Services, LLC, et al.,

Appellees.


An Appeal from a non-final order from the Circuit Court for Miami-Dade County, William Thomas, Judge.

Cozen O'Connor, and James A. Gale, Samuel A. Lewis, David M. Stahl, Matthew N. Horowitz and Jonathan E. Gale, for appellants.

Boies Schiller Flexner LLP, and James Fox Miller (Hollywood); Boies Schiller Flexner LLP, Carlos M. Sires and Sigrid S. McCawley (Fort Lauderdale), for appellees.


Before FERNANDEZ, LOGUE and GORDO, JJ.

GORDO, J.

The appellants, defendants in the suit below, appeal the trial court's nonfinal order denying their motion to compel arbitration and denying their alternative motions to stay litigation or to transfer venue. We have jurisdiction. See Fla. R. App. R. 9.130(a)(3)(A), (a)(3)(C)(iv). For the following reasons, we reverse the portion of the order denying the appellants' motion to compel arbitration. We affirm without further discussion the portions of the order denying the stay of litigation and the transfer of venue.

## FACTS & PROCEDURAL HISTORY

The appellees, ABS Healthcare Services, LLC and Heath Option One, LLC, doing business as Insurance Care Direct (collectively, "ICD"), sued the appellants, Kratos Investments LLC, Health Team One, LLC, Complete Vital Care LLC, Health Essential Care LLC and Richard Ryscik over an alleged scheme to steal ICD's business.

ICD is a health and life insurance agency that contracts with licensed insurance agents to market and sell benefit plans. ICD's relationship with its licensed agents is governed by ICD Exclusive Agent Agreements, pursuant to which ICD authorizes agents to solicit customers and to use ICD's confidential and trade secret information in connection with the marketing and sale of its plans. The Agreements prohibit agents from inducing

2

customers to discontinue business with ICD and prohibits agents from selling non-ICD plans.

On April 15, 2020, ICD filed a complaint against the appellants alleging they conspired with ICD agents in a scheme to steal ICD's business by setting up sham competing entities, interfering with the ICD Exclusive Agent Agreements, illicitly soliciting ICD's customers and prospective customers, and misappropriating ICD's confidential information and trade secrets. ICD's five-count complaint was for conspiracy to breach the ICD Exclusive Agent Agreements, tortious interference with Agent Agreements, tortious interference with business relationships, misappropriation of trade secrets and conspiracy to misappropriate trade secrets. ICD prayed for the following relief: "All compensatory damages for all injuries suffered as a result of Defendants' wrongdoing, including special damages such as consequential damages, lost profits, and disgorgement of Defendants' ill-gotten gains."

ICD separately commenced actions against eight of its licensed agents individually in Broward County alleging breach of contract, tortious interference with contract, claims for permanent injunctive relief, misappropriation of trade secrets and unjust enrichment. ICD sought both legal and equitable relief in the form of compensatory damages, permanent injunctive relief, disgorgement and imposition of a constructive trust.

On May 14, 2020, the appellants filed a motion to compel arbitration and to stay or dismiss the action pending the resolution of arbitration in the Broward cases, and to dismiss or transfer venue to Broward County. The appellants, non-signatories, sought to compel ICD, a signatory, to arbitration pursuant the ICD Exclusive Agent Agreements' dispute resolution provision.

> Both parties shall use best efforts to resolve disputes in an amicable manner for a period of ten (10) days. The Parties agree that any dispute arising out of or related in any way to the solicitation, negotiation, inception or performance of this Agreement (whether the dispute is couched in terms of contractual, statutory, or common law grounds) shall be exclusively resolved and construed in accordance with Commercial Arbitration Rules of the American Arbitration Association pursuant to the laws of the State of Florida governing arbitration. For any disputes not resolved amicably, venue shall be Broward County, Florida and any judgment upon the award rendered by the arbitrator(s) may be entered in any court having competent jurisdiction thereof.

The appellants argued they were entitled to enforce the arbitration provision against the signatory under the doctrine of equitable estoppel. ICD opposed the motion claiming there was no basis to compel it to arbitrate its claims against non-signatories under the doctrine of equitable estoppel because

4

ICD's claims against its own agents fell within the carve-out provision of the arbitration clause.[1]

Following a hearing, the trial court denied the motion finding that the appellants could not invoke arbitration because they were not signatories to the Agent Agreements and there was no direct relationship to the Agreements that would make it inequitable to allow the appellants' claims to proceed outside of arbitration. This appeal followed.

## STANDARD OF REVIEW

"This Court reviews an order granting or denying a motion to compel arbitration de novo." Duty Free World, Inc. v. Miami Perfume Junction, Inc., 253 So. 3d 689, 693 (Fla. 3d DCA 2018).

## LEGAL ANALYSIS

"[N]ot every dispute that arises between contracting parties will be subject to arbitration . . . ." Kolsky v. Jackson Square, LLC, 28 So. 3d 965, 968 (Fla. 3d DCA 2010) (quoting Roth v. Cohen, 941 So. 2d 496, 499 (Fla. 3d DCA 2006)). "An obligation to arbitrate is based on consent . . . ." Marcus v. Fla. Bagels, LLC, 112 So. 3d 631, 633 (Fla. 4th DCA 2013). "[F]or this reason 'a non-signatory to a contract containing an arbitration agreement

---

[1] The ICD Exclusive Agent Agreement provided the following exception: "ICD may pursue its equitable remedies, including specific performance, injunctions and restraining orders in any court of competent jurisdiction."

5

ordinarily cannot compel a signatory to submit to arbitration.'" Id. (quoting Roman v. Atl. Coast Constr. & Dev., Inc., 44 So. 3d 222, 224 (Fla. 4th DCA 2010)). "However, courts 'have been willing to estop a *signatory* from avoiding arbitration with a nonsignatory when the issues the nonsignatory is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed.'" Id. (citation omitted). "The doctrine of equitable estoppel on the basis of intertwined claims . . . applies when a *signatory* to a contract containing the arbitration clause raises allegations of substantially interdependent and concerted misconduct by both a non-signatory and one or more of the signatories to the agreement." Greene v. Johnson, 276 So. 3d 527, 531 (Fla. 3d DCA 2019) (citing Marcus, 112 So. 3d at 633–34); see Kolsky, 28 So. 3d at 969; Beck Auto Sales, Inc. v. Asbury Jax Ford, LLC, 249 So. 3d 765, 767 (Fla. 1st DCA 2018) ("Florida and federal courts have recognized that principles of equitable estoppel sometimes allow a non-signatory to compel arbitration against someone who *had* signed an arbitration agreement.").

The appellants argue that, although they are non-signatories to the Agent Agreements, they have the right to compel arbitration because ICD's allegations against them are intertwined with the Agent Agreements. ICD specifically alleges the appellants conspired with its agents in a scheme to

6

steal ICD's business by interfering with and causing the agents to breach the Agent Agreements. The claims against the appellants and the agents are based on the same set of operative facts and unquestionably premised upon substantially interdependent and concerted misconduct between the non-signatories and signatories to the Agent Agreements. Thus, we conclude ICD is estopped from avoiding arbitration. See Kolsky, 28 So. 3d at 970 (holding equitable estoppel warranted where the signatory plaintiff's "claims against the non-signatory appellants arise out of the same allegations of concerted conduct among the non-signatory appellants and [signatory], are based on the same facts, and are inherently inseparable"); Greene, 276 So. 3d at 531 (holding plaintiff was estopped from avoiding arbitration where plaintiff's claims against non-signatory defendants "are based on the same set of operative facts" that plaintiff alleged against the signatory defendant, and "the defenses of the non-signatory defendants will be dependent upon, if not the same as, [the signatory's] defenses").

In the same manner, we conclude the allegations against the appellants fell within the scope of the arbitration clause in the Agent Agreements as they arose out of and were related to the agents' performance of the Agreement. The signatories to the Agent Agreements expressly agreed that "any dispute arising out of or related in any way to the

solicitation, negotiation, inception or performance of this Agreement . . . shall be exclusively resolved . . . [by] arbitration." This Court has recognized such language as permitting non-signatories to enforce arbitration agreements. "[A]rbitration provisions containing the language, 'arising out of or related to,' in certain instances can be construed to include non-signatories." Armas v. Prudential Sec., Inc., 842 So. 2d 210, 211 (Fla. 3d DCA 2003). Based on our review, we find there is a "sufficient nexus" between ICD's claims against the appellants and the Agent Agreement "such that the arbitration clause applies and is enforceable between the parties." Kolsky, 28 So. 3d at 969.

ICD, however, argues that its claims fall within the arbitration provision's exception providing that the parties may seek equitable remedies in court. The Agent Agreements contain a carve-out provision providing: "ICD may pursue its equitable remedies . . . in any court of competent jurisdiction." ICD contends it mainly sought equitable relief against the agents, thus the claims against the agents themselves are not arbitrable and by extension neither are the claims against the appellants. We reject ICD's argument as on the record before us, ICD's complaints against the individual agents seek both legal and equitable relief and the Broward court has compelled arbitration in several pending actions.

8

With regard to ICD's claims against the appellants, ICD seeks compensatory damages, including special damages such as consequential damages, lost profits and disgorgement of ill-gotten gains. The fact that ICD's prayer for relief seeks disgorgement[2] does not bring ICD's claims under the carve-out exception. See Duty Free World, 253 So. 3d at 698 (concluding unjust enrichment claim seeking disgorgement did not fall within the arbitration clause's exception permitting the parties to seek "equitable . . . relief" in the circuit court as claim sought legal, rather than equitable, relief). Each count of ICD's complaint asserts a legal cause of action seeking compensatory damages. Thus, we conclude that ICD's claims seek legal, rather than equitable relief and the exception permitting parties to seek equitable relief in the circuit court does not apply. See Duty Free World, 253 So. 3d at 699.

---

[2] "Disgorgement is an equitable remedy . . . ." Duty Free World, 253 So. 3d at 698 (quoting S.E.C. v. Monterosso, 756 F.3d 1326, 1337 (11th Cir. 2014)); see Cushman & Wakefield, Inc. v. Office Depot, Inc., No. 08-80321-CIV-MIDDLEBROOKS/JOHNSON, 2008 WL 11409887, at *3 (S.D. Fla. Nov. 3, 2008) ("Disgorgement is a remedy . . . and not an independent cause of action."); Waldrop v. S. Co. Servs. Inc., 24 F.3d 152, 157 (11th Cir. 1994) ("[D]amages are equitable when 'they are restitutionary, such as in "action[s] for disgorgement of improper profits."'" (citation omitted)).

9

**CONCLUSION**

For the foregoing reasons, we determine the trial court erred in denying the motion to compel arbitration.  We reverse, in part, the order and remand the cause to the trial court with instructions to grant the motion to compel arbitration of all claims against the appellants.  We affirm the order in all other respects.

Affirmed in part, reversed in part and remanded with instructions.